67 A.3d 759

Susan B. Fralick BALL, Larry G. Comisak, Kathryn S. Comisak, Richard Cowhig, Caren Cowhig, Florence Dahm, on Behalf of Herself and the Estate of Edward Dahm, Christine Fisher, Warren Fisher, Barbara A. Frankl, David Glass, Elaine Glass, Jared Glass, Alma R. Jacobs, on Behalf of Herself and the Estate of J. Alexander Jacobs, Eugene Katz, Lenore Katz, Sun E. Kim, Joan Kuch, on Behalf of Herself and the Estate of Leonard Kuch, John McCarry, Marybeth McCarry, Jonathan McCarry, Matthew McCarry, Patrick McCarry, James J. Moore, III, Patricia G. Moore, Louis Nicolai, Bruce Nichols, Beatrice

Nichols, Richard K. Oberholtzer, Wendy Oberholtzer, Megan Oberholtzer, Taylor Oberholtzer, Richard H. Shepherd, Jr., Wendie Steffens, Mark Steffens, Payton Thurman, Joan Thurman, D. Jean Tisdall, Susan Walsh, Kurt Weidenhammer, Debbie Weidenhammer, Karen Weidenhammer, Maryann Wrubel, Metro J. Wrubel and Todd Wrubel

v.

BAYARD PUMP & TANK CO., INC., Gulf Oil Limited Partnership, E.O. Habhegger Co., Inc., Titeflex Corporation, Veeder–Root Co., Wagner and T.F.W., Inc.

v.

Marley Pump Company and Containment Technologies Corporation.

Appeal of Marley Pump Company, Veeder–Root Co., E.O. Habhegger Co. and Bayard Pump & Tank Co., Inc.

Susan B. Fralick Ball, Larry G. Comisak, Kathryn S. Comisak, Richard Cowhig, Caren Cowhig, Florence Dahm, on Behalf of Herself and the Estate of Edward Dahm, Christine Fisher, Warren Fisher, Barbara A. Frankl, David Glass, Elaine Glass, Jared Glass, Alma R. Jacobs, on Behalf of Herself and The Estate of J. Alexander Jacobs, Eugene Katz, Lenore Katz, Sun E. Kim, Joan Kuch, On Behalf of Herself and the Estate of

Leonard Kuch, John McCarry, Marybeth McCarry, Jonathan McCarry, Matthew McCarry, Patrick McCarry, James J. Moore, III, Patricia G. Moore, Louis Nicolai, Bruce Nichols, Beatrice Nichols, Richard K. Oberholtzer, Wendy Oberholtzer, Megan Oberholtzer, Taylor Oberholtzer, Richard H. Shepherd, Jr., Wendie

Steffens, Mark Steffens, Payton Thurman, Joan Thurman, D. Jean Tisdall, Susan Walsh, Kurt Weidenhammer, Debbie Weidenhammer, Karen Weidenhammer, Maryann Wrubel, Metro J. Wrubel and Todd Wrubel

v.

Bayard Pump & Tank Co., Inc., Gulf Oil Limited Partnership, E.O. Habhegger Co., Inc., Titeflex Corporation, Veeder–Root Co., Wagner and T.F.W., Inc.

v.

Marley Pump Company and Containment Technologies Corporation.

Appeal of Gulf Oil Limited Partnership and Thomas F. Wagner and Thomas F. Wagner, Inc.

Supreme Court of Pennsylvania.

Argued Nov. 29, 2011.

Decided May 28, 2013.

292

Robert T. Lehman, Archer & Greiner, P.C., Robert C. Pugh, Kane, Pugh, Knoell, Troy & Kramer, L.L.P., Donald J. Martin, Norristown, for Gulf Oil L.P., Appellant.

John Mattioni, Mattioni, Ltd., Philadelphia, for Wagner and T.F.W., Inc., Appellant.

Robert Douglas Billet, Billet & Connor, P.C., Philadelphia, for Titeflex Corporation, Appellee.

Joseph Michael Cincotta, Philadelphia, for Containment Technologies Corporation, Appellee.

Brendan K. Collins, David Pittinsky, Ballard Spahr Andrews & Ingersoll, L.L.P., Philadelphia, for Fralick Ball, et al., Susan B., Appellee.

Audrey J. Copeland, Kimberley Jan Woodie, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., King of Prussia, for E.O. Habhegger Co., Inc., Appellee.

William Joseph D'Annunzio, Kathryn Ann Dux, Philadelphia, German, Gallagher & Murtagh, P.C., David R. Erickson, Dean F. Murtagh, Philadelphia, Paul Williams, Philadelphia, for Marley Pump Company, Appellee.

Thomas C. DeLorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Philadelphia, for Veeder Root Company, Appellee.

Jeanine A. Hillesland, for Bayard Pump & Tank Company, Inc., Appellee.

BEFORE: CASTILLE (CJ), SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

We are called upon here to determine whether the Superior Court erred in holding that the trial court abused its discretion in ordering a separate trial of the claims of four test-case, or "bellwether" plaintiffs, from among the 45 plaintiffs in this case. For the reasons set forth herein, we conclude that the Superior Court erred.

This case stems from the underground leaking of gasoline from a gasoline station in Blue Bell, Pennsylvania, which caused an explosion in the springhouse of a realty office situated across the street from the station. The leak was widespread; many thousands of gallons moved underground throughout the surrounding neighborhoods. Pursuant to Pennsylvania Rule of Civil Procedure 2229(a), 45 affected individuals filed a single complaint against six defendants, alleging that gasoline and vapor (hereinafter "gasoline") from the leak had traveled underground, through soil and groundwater, and had reached and entered their homes, causing property damage to their homes and illness to those living there.[1] The six defendants then impleaded two additional defendants.

---

1. Pa.R.C.P. 2229(a) provides: "[p]ersons may join as plaintiffs who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action."

In order to determine how to best manage the litigation, the trial court conducted hearings on various motions, at which hearings, *inter alia*, it heard testimony and considered evidence regarding challenges to proposed expert witnesses. At the conclusion of this process the court issued a case management order severing the cases of four "bellwether" plaintiffs for trial in reverse bifurcated fashion, i.e., with exposure, causation and damages to be tried first, followed by a separate trial on liability of the defendants, if needed.[2] The case management order provided as follows:

* * *

[P]ursuant to pre-trial memoranda submitted by all parties through counsel, and taking cognizance of all matters brought before this [c]ourt prior to the above submissions, and after perusal of the same, the [c]ourt finds that by virtue of the great numbers of plaintiffs [ (45) ] and defendants (8) and because of the great number of witnesses to presented by the parties (100+), a reverse bifurcation trial wherein a small, finite, number of parties will present their case shall:

a. foster the avoidance of prejudice by the presentation of lesser numbers of parties and witnesses;

b. promote efficiency and judicial economy;

c. foster a lessening of expenses to all parties;

d. enhance the prospects of a possible settlement; and

e. foster a more orderly presentation of evidence to the jury.

2. Severance is governed by Pa.R.C.P. 213(b), which provides:

The court, in furtherance of convenience or to avoid prejudice, may on its own motion or on motion of any party, order a separate trial of any cause of action, claim or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

While the trial court both severed the four bellwether plaintiffs' claims for trial and bifurcated the exposure-causation-damages phase and the liability phase of the trial, this appeal challenges only the severance determination. No party asserts that bifurcation was improper.

Accordingly, and taking all of the above into consideration, the [c]ourt ORDERS that this matter shall be tried as follows:

1. Trial–Damages

a. The following issues will be tried before a single jury:

 i. Whether the [gasoline] reached plaintiffs['] property;

 ii. Whether the [gasoline] entered the plaintiffs' homes/houses;

 iii. Whether exposure to the [gasoline] caused the personal injuries claimed;

 iv. Whether exposure to the [gasoline] warrant[s] the medical monitoring claims by plaintiff[s];

 v. Whether exposure to the [gasoline] caused property damage and property value diminution; and

 vi. The amount of plaintiffs' damages.

b. The above issues will be tried before a single jury. Four claims shall be tried, with Plaintiffs selecting two individual plaintiffs and the Defendants selecting two individual plaintiffs.

2. Post–Verdict

a. Subsequent to verdict rendered by the jury above mentioned, the parties shall be granted a ninety (90) day period of time, if appropriate, to engage in settlement negotiations in the *Ball* Plaintiffs' claims.

3. Trial–Liability

a. Should the above mentioned period of time fail to produce a settlement between the parties, then the issue of the liability of each defendant in the original four matters shall be tried before a second and separate jury.

\* \* \*

5. Remaining Plaintiffs

a. The remaining plaintiffs shall try the issues of exposure, causation and damages before a fourth and separate jury.

The court also entered a pre-trial order precluding, at the upcoming trial, "any mention, testimony and/or other evidence of the claims of non-trial plaintiffs or nonparties in this

litigation, outside of mention of the same as part of the recitation of the 'history' of the case." Trial Court Order, dated 3/15/07.

A jury was picked for the exposure-causation-damages trial, and the trial took place. Just before the jury reached its verdict, two of the eight defendants settled with all of the plaintiffs, including the non-trial plaintiffs. Thereafter, the jury returned a defense verdict, finding that the gasoline had reached but not entered the residences of three of the bellwether plaintiffs and had not even reached the residence of the fourth, and thus that none of the bellwether plaintiffs had suffered injury or damages attributable to the gasoline leak. The trial court denied the plaintiffs' motion for a new trial and, after the court determined that its order was final under Pennsylvania Rule of Appellate Procedure 341(c), the plaintiffs appealed.[3]

In its Pa.R.A.P. 1925(a) opinion filed subsequent to the plaintiffs' appeal, the trial court explained its reasons for having severed the claims of four plaintiffs for the initial trial:

[W]e properly determined that severance was needed to avoid the confusion associated with the many properties, and their respective damage claims. By severing the matter, we hoped to promote judicial economy, and pare ... burdens such as expense and juror inconvenience inevitably associated with the projected eight-ten (8–10) month jury trial if all Plaintiffs['] cases were tried in a single proceeding.

Had [all] cases been tried together, the jury would have been forced to separate facts relating to each defendant, each plaintiff, each plaintiff's property and its location. This task would have been coupled with the receipt of very

---

3. Pa.R.A.P. 341(c) provides, in pertinent part:

Determination of finality. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case ...

technical scientific evidence of plume migration, soil vapor intrusion, dose, exposure, and medical causation. Such a task was simply unfair to ask of a jury panel, and would have lead [sic] to inevitable juror confusion.

Further, when we coupled the aforementioned factors with the potential prejudice that the Defendants would suffer by allowing the Plaintiffs to bolster each individual claim with the mere fact that [forty-one (41)] other claims had been filed (albeit with different injuries and different property locations) we determined that severance was required. Clearly, the "spill-over" effect of dozens of Plaintiffs alleging exposure and claims of injury, distress, disease, fear, and property damage would have had an insurmountable prejudicial effect on the Defendants.

\*　　\*　　\*

... We scheduled damages to be tried first so that the parties could obtain a value on the cases and hopefully settle the liability phase, and/or remaining Plaintiffs' claims. Significantly, this procedure worked.

Trial Court Opinion, dated 4/25/08, at 6–8 (citations omitted).

In an unpublished 2–to–1 memorandum opinion, with Judge Richard Klein dissenting, the Superior Court reversed the order of the trial court denying the plaintiffs' motion for a new trial and remanded the matter for a new trial with respect to all 45 plaintiffs. *Ball v. Bayard Pump & Tank Co., Inc.*, 3061 EDA 2007, 988 A.2d 712 (Pa.Super. Oct. 30, 2009) (hereinafter "Memorandum Opinion"). It held that the plaintiffs had been prejudiced by being unduly constrained in presenting their evidence and by their inability to refer to or present evidence of damages to the remaining plaintiffs, some of whom were members of the same households as the bellwether plaintiffs. The Superior Court first concluded that, although decisions under Pa.R.C.P. 213(b) are within the trial court's discretion, the court here nevertheless had abused its discretion by severing the claims for trial. Memorandum Opinion at 7. The Superior Court stated: "Plaintiffs in mass tort cases may suffer prejudice if the number of plaintiffs in a trial is so

limited that their credibility is implicitly called into question.... The interests that militate in favor of severance and bifurcation must be weighed against the danger that the jury sees so small a part of the picture of a case that they are unable to make a fully informed decision." *Id.* The court reasoned that the "discrepancy" between the scale of the disaster and the number of plaintiffs in the trial may have caused the jury to unjustifiably infer that inhabitants of nearby homes were unaffected and were not pursuing claims, and to therefore reject plaintiffs' expert's testimony that gasoline had entered the bellwether plaintiffs' homes. *Id.*

The court further disagreed with the trial court's view regarding potential prejudice to the defendants. It acknowledged the potential for a "spill-over effect" prejudicial to the defendants, but stated that the plaintiffs were equally prejudiced by being compelled to present their claims individually, because "isolating a few plaintiffs may well have trivialized their claims and caused the jury to perceive the isolated plaintiffs as hypersensitive and unsympathetic." *Id.* at 8. The majority also opined that avoiding confusion, promoting judicial economy, and increasing settlement prospects did not justify severance because the remaining 41 plaintiffs' claims still had to be tried, which arguably would be just as complicated as having tried all 45 plaintiffs' claims together in the first place. The court determined that trying the bellwether plaintiffs' cases separately did not significantly reduce the potential for jury confusion in the second case because each trial would still include a large amount of complicated technical evidence. *Id.* at 9. Accordingly, the court concluded that severing the four plaintiffs' cases prejudiced those plaintiffs and did not significantly further the interests of convenience and judicial economy. *Id.* It remanded the matter for a new trial of the claims of *all 45 plaintiffs*. *Id.*

In his dissent, Judge Klein reasoned that severing the four plaintiffs' cases was within the court's discretion under Rule 213(b) to provide a roadmap for the trial of the remaining cases and did not prejudice anyone. *Id.* at 2 (Klein, J., dissenting). He opined that a jury would have difficulty

keeping the individual characteristics of each plaintiff separate if 45 cases were tried together, and he noted that test cases frequently give lawyers perspective on litigation and lead to settlements, as happened here. *Id.* at 3. Judge Klein noted further that, although severing four cases and leaving the other 41 still to be tried might not have saved time, his experience in multi-plaintiff cases and mass tort cases had proven that once the test case goes to trial, the other cases often settle. *Id.*

Judge Klein strongly disagreed with the majority's view that precluding evidence of the other 41 plaintiffs' claims had prejudiced the bellwether plaintiffs. He believed instead that precluding such evidence *avoided* prejudice, inasmuch as each plaintiff bore and will bear the burden of showing that contamination affected his or her property and caused injury or damage. According to Judge Klein, evidence concerning widespread problems in the neighborhood could prejudice the defendants and is irrelevant to proving the claim of each separate plaintiff. Finally, he stated that, based on the record, "there was no question that the jury knew of the widespread nature of the alleged contamination." *Id.* at 8.

We granted allowance of appeal of the following two questions:

1. Whether the Superior Court, in reversing the order of the trial court and granting the bellwether plaintiffs a new trial with the remaining 41 plaintiffs, erred and improperly substituted its own judgment for that of the trial court concerning how to fairly and equitably protect the interests of all parties, while managing the resources of the trial court?

2. Whether the decision of many plaintiffs in complex litigation to join in a single complaint, as permitted by Pa.R.C.P. 2229(a), prevents a trial court from exercising its discretion under Pa.R.C.P. 213(b) to sever claims or order separate trials of a small number of bellwether plaintiffs?

*Ball v. Bayard Pump & Tank Co., Inc.*, 609 Pa. 98, 15 A.3d 65 (2011).[4]

Appellants argue that the Superior Court erred by improperly substituting its own judgment for that of the trial court, and that the Superior Court was obliged to defer to the trial court's decision because the trial court was in the best position to determine how to protect the interests of all parties while managing the resources of the court. They note that the trial court's decision to sever was informed by holding oral arguments, soliciting suggested case management solutions from the parties, and presiding over hearings concerning expert evidence, and that the trial court's "on-the-scene" factual evaluation of how a jury might best understand and analyze the evidence was supported by the record. Brief of Appellants Marley Pump Company *et al.* at 13. They assert that the Superior Court engaged in speculation about what jurors "could have" understood from the absence of evidence regarding the non-bellwether plaintiffs' claims, thus showing that the Superior Court failed to accord proper deference to the discretion of the trial court. *Id.* at 14. Appellants further argue that the Superior Court disregarded the fact that each plaintiff has the burden of proving his or her claim. Appellants argue that specific evidence of other plaintiffs' alleged injuries was irrelevant to the bellwether plaintiffs' claims and would have prejudiced Appellants.

Appellants also advance an argument based on public policy. They contend that this case has broad implications for the ability of Pennsylvania trial courts to manage mass tort and other complex litigation. They assert that while the Pennsylvania Rules of Civil Procedure permit liberal joinder of plaintiffs in a single action, it is essential that trial courts retain their discretion to efficiently manage their dockets and protect the rights of the parties by severing claims when appropriate. According to Appellants, bellwether trials are particularly useful and popular because, as in this case, they facilitate settlement and resolution of claims by allowing parties to

4. These two issues encompass the issues raised by Appellees as appellants in the Superior Court.

value their respective cases and resolve their disputes. Appellants assert that bellwether trials should not only be permitted in Pennsylvania, but encouraged.

Appellees argue that the trial court prejudiced them by severing the exposure-causation-damages claims of four bellwether plaintiffs for trial separate from the claims of the other plaintiffs, including parents and children who lived with some of the bellwether plaintiffs. Appellees contend they were further prejudiced by the trial court's order precluding evidence at their trial of the claims of non-bellwether plaintiffs (except to recite case history) because this misled the jury into believing that family members and neighbors of the bellwether plaintiffs were not pursuing claims. Appellees assert that the trial court created the impression for the jury that there had been no harmful gasoline leak—at least not one that had entered the homes of the bellwether plaintiffs. Appellees argue that, given the large scale of the gasoline leak and contamination, severing the cases of just the four bellwether plaintiffs for a trial that did not even include relatives living with them prejudiced them by making it appear that only the four bellwether plaintiffs were pursuing claims, thereby trivializing those claims. As a result of this alleged trivialization, Appellees argue that the jury concluded that gasoline had reached but not entered the homes of three of the bellwether plaintiffs. Appellees assert that rather than sever the cases for trial, the trial court should have utilized jury instructions to provide any needed clarifications.

Appellees contend that utilizing these test cases did not save any time and did not achieve any efficiency. They assert that by severing the four claims, the trial court disregarded the fact that the testimony regarding gasoline exposure related to all plaintiffs residing in each home. Appellees assert that all plaintiffs were affected to the same extent by the intrusion of contaminated vapor, and that "the only distinct nature of the 45 plaintiffs' claims was the kind of injury each plaintiff suffered and the cause thereof." Appellees' Brief at 21. Appellees contend that any fair bellwether trial, at a mini-

mum, should have included the family-member plaintiffs residing in the homes of the bellwether plaintiffs.[5]

Finally, Appellees note that the plaintiffs would have called the same two experts to testify regarding exposure no matter how many plaintiffs' cases were being tried; that it would have been more efficient to have a single exposure trial involving all plaintiffs, with both sides' exposure experts testifying only once. Appellees concede that the trial court's goal was admirable, but contend that fostering settlement could not justify adopting a trial plan that prejudiced plaintiffs' presentation of their exposure case in the manner noted by the Superior Court. They argue that, had the trial court enlarged the bellwether plaintiff group to include just the four plaintiffs' family members, the trial would not have been drastically lengthened, the jury would not have been confused, and the bellwether plaintiffs would not have been prejudiced.

## Discussion

The Superior Court is obligated to apply an abuse of discretion standard in reviewing a trial court's denial of a motion for a new trial, and may overturn the trial court's determination only if that court abused its discretion. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 521 A.2d 413, 419 (1987) (applying abuse of discretion standard of review to trial court decision not to bifurcate trial). An abuse of discretion

5. In arguing that the group of bellwether plaintiffs should have included all members of the four bellwether plaintiffs' households, Appellees cite *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir.1997), for the proposition that bellwether plaintiffs must be *representative* of all plaintiffs. However, the *Chevron* court was concerned about representativeness because the bellwether results in *Chevron* were intended to be extrapolated to and be binding upon all 3,000 plaintiffs involved in that case. Here, they were not so intended. All of the non-bellwether plaintiffs in this case still have their cases to try. Moreover, *Chevron* involved just a single defendant and no issue of bifurcation; the trial was not to be bifurcated but rather to be a unitary trial on liability and damages. Perhaps most significantly, the Fifth Circuit abrogated the trial plan in *Chevron* on *due process* grounds because the claims of 3,000 plaintiffs could have been extinguished based on the results of a trial of a non-representative sample of plaintiffs. *Id.* at 1020. Appellees make no due process claim here, nor does a valid one exist, as the results of the four plaintiffs' trials have no binding effect on the other plaintiffs' claims.

occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. *Middletown Twp. v. Lands of Stone*, 595 Pa. 607, 939 A.2d 331, 335 n. 3 (2007). Because the issue of whether the Superior Court correctly applied the law in reviewing the trial court's determination is a question of law, we exercise plenary, de novo review in evaluating the Superior Court's determination. *Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Bd. of Assessment Appeals*, 615 Pa. 463, 44 A.3d 3, 6 (2012) (stating that this Court exercises a plenary scope and de novo standard of review over purely legal questions). An abuse of discretion "may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

 The decision whether to sever or bifurcate under Rule 213(b) is entrusted to the discretion of the trial court, which is in the best position to evaluate the necessity for taking measures the rule permits. *Gallagher v. Pa. Liquor Control Bd.*, 584 Pa. 362, 883 A.2d 550, 557 (2007). The Superior Court determined here that Appellees, Plaintiffs below, had been prejudiced in three ways. First, they were prejudiced because "[p]laintiffs in mass tort cases may suffer prejudice if the number of plaintiffs in a trial is so limited that their credibility is implicitly called into question." Memorandum Opinion at 7. The Superior Court does not explain why a jury would question a plaintiff's credibility based merely on the number of plaintiffs whose cases are being tried; it cites no evidence indicating that the jury either questioned or could have questioned the credibility of the plaintiffs on this ground. Indeed, the Superior Court's opinion is devoid of citations to authority or to the record that would support the notion of prejudice it advances. The jury would have had to speculate to reject the plaintiffs' credibility on the ground suggested by the Superior Court, particularly in light of the record, which

the Superior Court does not discuss. Additionally, even if the Superior Court's concern is meritorious, it is a simple matter for a trial court to craft a jury instruction to make certain no such speculation and improper discrediting of bellwether plaintiffs occurs.

Appellees contend that the bellwether group of plaintiffs should at least have included all members of the bellwether plaintiffs' households. Notably, this argument is a fallback from the primary position advanced below by Appellees—that *all* of the cases should have been tried together. This retrenchment implicitly underscores the deference that must be accorded the trial court's exercise of discretion. Apart from repeating the Superior Court's speculations, however, Appellees fail to explain how they were prejudiced by not being able to present evidence of the claims of other plaintiffs in their households. How, for example, would evidence relating to other plaintiffs' claims have rendered the existence of facts relating to their own claims more probable? See Pa.R.E. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). How would evidence that other people were asserting claims have increased the probability that the jury would have determined, based on the evidence, that gasoline had entered the bellwether plaintiffs' homes? In short, the evidence that Appellees were not permitted to offer was not relevant to their claims. Moreover, the Superior Court's concern that the jury might have seen so small a part of the "picture of the case" as to be unable to make a fully informed decision is contradicted by the fact that the jury *was* aware of the large scale of the gas leak, as Judge Klein noted in his dissent. What the trial court would not allow the jury to be informed of was *evidence* relating to *other plaintiffs' claims*, which, as just explained, was not relevant to proving the bellwether plaintiffs' claims.

Even if the trial court had permitted non-trial plaintiffs to testify in the bellwether trial about *their* claims, those plaintiffs' claims would not have been adjudicated in the bellwether

trial. Appellees do not contend that the non-trial plaintiffs wished to testify about injury or damage to the *bellwether* plaintiffs, only that they should have been permitted to testify regarding *their own* claims. As Appellants and dissenting Judge Klein note, every tort plaintiff must prove that the defendant's conduct caused his or her injury. *See, e.g., Skipworth v. Lead Indus. Ass'n, Inc.*, 547 Pa. 224, 690 A.2d 169, 172 (1997) ("[A] plaintiff, in order to recover, must establish that a particular defendant's negligence was the proximate cause of her injuries."). In meeting this burden, a plaintiff is not entitled to a "boost" from specific evidence relating to the claims of *other* plaintiffs whose cases are not being adjudicated.

Second, the Superior Court panel majority opined that Appellees had been prejudiced because "the discrepancy between the scale of the disaster and the number of plaintiffs in the trial may have caused the jury to make unjustified inferences." Memorandum Opinion at 7. Specifically, the majority asserts that the jury's conclusion, based on the expert testimony presented, that gasoline had reached but not entered three of the bellwether plaintiffs' homes, "could have been influenced by the false notion that other inhabitants of those homes were unaffected and were not pursuing claims." *Id.* Again, this conclusion is speculative and is not based on the record. It implies that if the jury had known that additional plaintiffs alleging injury lived in the homes of some of the bellwether plaintiffs, it then might have reached an opposite conclusion, still based on the same expert scientific evidence, and determined that contamination had, in fact, entered those homes. The panel majority furnishes no indication as to how this could have been the case.

Moreover, the Superior Court's conclusion that the discrepancy between the scale of the disaster and the number of plaintiffs in the trial *may have* caused the jury to make unjustified inferences serves to emphasize that the Superior Court simply substituted its judgment for the trial court's rightful exercise of discretion under Rule 213(b). The Superior Court completely fails to explain how the trial court has

committed an abuse of discretion. As noted, for a trial court's exercise of discretion to constitute an abuse, it must be the result of manifest unreasonableness, partiality, prejudice, or such a lack of support as to be clearly erroneous. *Grady, supra* at 1046; *Lands of Stone, supra* at 335 n. 3. Not even arguably was that standard met here. As the trial court's opinion shows, it carefully considered a host of factors relevant to determining whether severance of the test cases was warranted under Rule 213(b) for convenience and avoidance of prejudice. It explained why its orders were aimed at assuring efficiency and convenience, and avoiding prejudice, the precise factors that inform Rule 213(b) and are expressly mentioned in the rule. Even the Superior Court acknowledged the potential for prejudice to the defendants if evidence of all plaintiffs' claims and damages were permitted at the trial of the four test cases. The trial court's weighing of the Rule 213(b) factors, based upon a well-developed record, and its employment of discretionary judgment, illustrates the very essence of the nature of the discretion reposed in a trial court in a matter like this. A trial court is not prevented from exercising this discretion simply because a large number of plaintiffs joins in one complaint pursuant to Pa.R.C.P. 2229(a). Such a filing does not eliminate or reduce the trial court's discretion to sever or bifurcate claims or issues under Rule 213(b).[6]

Third, the panel majority contends that Appellees were prejudiced by being compelled to present their claims individually, and that "isolating" those claims may have trivialized them, causing the jury to perceive the bellwether plaintiffs as hypersensitive and unsympathetic. Apart from there being no legal requirement or entitlement for a plaintiff to have a jury consider him or her to be sympathetic, the Superior Court's assumption that somehow the jury failed to sympathize with the bellwether plaintiffs is based on speculation; the majority cites no evidence of record to support its conclusion. It is

6. Notably, this case is not a class action where evidence common to all class members is presented and the result is binding on all class members.

equally possible, if not probable, that the jury may actually have sympathized with Appellees but nevertheless determined, based on the expert evidence, that gasoline had not reached or entered their homes.[7]

The Superior Court faults the trial court for "isolating" four plaintiffs, thereby presumably giving the jury too narrow a view and creating a discrepancy between the number of plaintiffs and the scale of the disaster. Yet the Superior Court does not contend that the trial court is precluded from utilizing Rule 213(b) to sever or bifurcate cases in furtherance of convenience or to avoid prejudice. One is left to wonder whether any fewer than all 45 plaintiffs could have been sufficient in the Superior Court's estimation. Where is the line to be drawn? To ask this question is to highlight the discretionary nature of a trial court's rulings applying Rule 213(b). Quite simply, the Superior Court would have drawn the lines differently from how the trial court drew them, but overturning a trial court on such a basis is precisely the type of improper review and substitution of an appellate court's judgment for a trial court's discretion that we have consistently held to be off limits.[8]

Finally, the Superior Court accepted Appellees' argument that a bellwether trial of just four cases was not efficient and did not save time, and that inefficiencies remained under the procedures employed by the trial court because the other cases still would have to be tried, and much of the same evidence would be offered. But, in fact, as both the trial court and dissenting Judge Klein point out, the trial court's method

7. Appellants and Appellees offered competing expert evidence on whether gasoline had entered the homes of the bellwether plaintiffs. Under our grant of allowance of appeal, it is not appropriate for us to address the strength of any such evidence, even though the parties discuss it in their respective briefs. It appears, however, that on this issue, the jury credited the expert evidence provided by Appellants over that provided by Appellees.

8. Indeed, the Superior Court's opinion remands the case for trial of all plaintiffs' cases together, without explaining why such a measure is required. Even Appellees no longer contend that all 45 plaintiffs' cases must be tried together. The Superior Court's ruling improperly deprives the trial court of exercising any discretion under Rule 213(b).

did achieve efficiency, as two defendants settled with all plaintiffs just before the jury rendered a verdict. These settlements mean there will be less confusion than might otherwise obtain when the liability phases of the non-bellwether plaintiffs' trials are reached (assuming such phases will be necessary per the trial court's order).[9] The Superior Court proposed no more efficient way of doing things, and, as Judge Klein noted, experience with bellwether trials in Pennsylvania demonstrates that other cases often settle, or have shorter trials, once the test case goes to trial. See also Manual for Complex Litigation, Fourth § 13.13 (2004) ("The early resolution of one or more issues by separate trial may provide a basis for settlement of others.")

In sum, we agree with Appellants that the Superior Court substituted its judgment for the trial court's judgment on a matter as to which the trial court enjoys discretion. The Superior Court did not address the specific, extensive reasons that the trial court gave for its severance/bifurcation and preclusion orders. Instead, the Superior Court stated merely that "the interests that militate in favor of severance and bifurcation" must be weighed against "the danger that the jury sees so small a part of the picture of a case that they are unable to make a fully informed decision." Memorandum Opinion at 7. Rule 213 does not provide for "weighing" the factors suggested by the Superior Court, and the Superior Court cites no authority for the proposition it advances. Rule 213 gives the trial court discretion to sever "in the furtherance of convenience or to avoid prejudice." That is what the trial court did here, providing detailed reasons for its actions. Indeed, inasmuch as Rule 213(b) permits the trial court to sever claims or issues *to avoid prejudice*, the rule itself contemplates that prejudice can potentially result from *joinder* of claims in certain circumstances. Under the circum-

9. Further, even if, by the time all cases have been tried, the trial court's severance determination is shown not to have saved a great deal of time, still, when the court ordered the cases severed, there was the prospect that time would be saved and efficiency achieved. Moreover, it is possible that additional settlements will take place along the way, perhaps reducing the necessity for some or possibly any more trials.

stances presented here, we hold that the Superior Court erred in determining that the trial court abused its discretion in severing claims to avoid prejudice. *See Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669, 673 (1985) (reviewing decision on motion for new trial based on a challenge to the weight of the evidence, and stating, "[u]nless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail.").[10] We further hold that the Superior Court erred in determining that the trial court abused its discretion in severing the claims in the interest of convenience and judicial economy.[11]

The order of the Superior Court is reversed and the verdict of the jury is reinstated.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justice EAKIN and BAER and Justice TODD join the opinion.

Justice SAYLOR files a dissenting opinion.

### DISSENTING OPINION

Justice SAYLOR.

Eight years after Appellees filed their original complaint, and apparently after trial finally had been scheduled, defendants proposed trial-management plans which would upend Appellees' conventional approach to the trial planning. Appellees reasonably requested that at least "all members of the

10. We noted in *Thompson* that whether a trial court grants or denies a motion for a new trial, its decision is reviewed in the same manner, under the same standard. *Id.*

11. Significantly, the conclusion that the plaintiffs suffered prejudice is based on a *hindsight* evaluation, which included the result of the trial. The Superior Court failed to assess whether the trial court abused its discretion **at the time it determined to sever the four cases for trial,** based upon what was known to the trial court at that time. *See Gallagher v. Pennsylvania Liquor. Control Bd.*, 584 Pa. 362, 883 A.2d 550, 559 n. 11 (2005) (proper review of a trial plan order is whether trial court abused its discretion at the time ruling was made, not at end of trial).

designated households of each designated plaintiff" should be included in at least one trial phase. Not only was this request denied, Appellees were precluded "from any mention, testimony and/or other evidence of claims of non-trial plaintiffs ..., outside the mention of the same as part of the recitation of the 'history' of the case."

While I have differences with the breadth of the Superior Court's rationale vindicating Appellees' position that imposition of the case management regime was an abuse of the trial court's discretion, I agree with Appellees that the wholesale division of households and associated limitations upon the evidence, at least, were unreasonable in the circumstances.

Accordingly, I am unable to join the majority in overturning the result attained under the Superior Court's order.