J-A12046-25

2026 PA Super 107

| DLP CONEMAUGH MEMORIAL MEDICAL CENTER, LLC D/B/A CONEMAUGH HEALTH CENTER, LLC D/B/A CONEMAUGH HEALTH SYSTEM AND CONEMAUGH MEMORIAL MEDICAL CENTER LEE CAMPUS; DLP HEALTHCARE, LLC D/B/A DUKE LIFEPOINT HEALTHCARE | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 680 WDA 2024 |
| v. | : : : | |
| JANE BR 1 DOE AND LAUREL PEDIATRIC ASSOCIATES, INC., D/B/A LAUREL PEDIATRIC ASSOCIATES; JOHNSTOWN PEDIATRIC ASSOCIATES D/B/A JOHNSTOWN PEDIATRIC ASSOCIATES; CONEMAUGH VALLEY MEMORIAL HOSPITAL D/B/A MEMORIAL MEDICAL CENTER; UPMC LEE HOSPITAL AND/OR UPMC LEE REGIONAL; AND JOHNNIE W. BARTO, M.D. | : : : : : : : : : : : : : : : : | |
| APPEAL OF: DLP CONEMAUGH MEMORIAL MEDICAL CENTER, LLC AND DLP HEALTHCARE, LLC | : : : | |

Appeal from the Order Entered January 8, 2024
In the Court of Common Pleas of Cambria County
Civil Division at No: 2019-2172

_____

| LAUREL PEDIATRIC ASSOCIATES, INC. D/B/A LAUREL PEDIATRIC ASSOCIATES | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A12046-25

| | : | |
|---|---|---|
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | No. 681 WDA 2024 |
| | : | |
| JANE BR1 DOE | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNSTOWN PEDIATRIC | : | |
| ASSOCIATES, INC. D/B/A | : | |
| JOHNSTOWN PEDIATRIC | : | |
| ASSOCIATES; DLP CONEMAUGH | : | |
| MEMORIAL MEDICAL CENTER, LLC | : | |
| D/B/A CONEMAUGH HEALTH | : | |
| CENTER, LLC D/B/A CONEMAUGH | : | |
| HEALTH SYSTEM AND CONEMAUGH | : | |
| MEMORIAL MEDICAL CENTER LEE | : | |
| CAMPUS; DLP HEALTHCARE, LLC | : | |
| D/B/A DUKE LIFEPOINT | : | |
| HEALTHCARE; CONEMAUGH VALLEY | : | |
| MEMORIAL HOSPITAL D/B/A | : | |
| MEMORIAL MEDICAL CENTER; UPMC | : | |
| LEE D/B/A UPMC LEE HOSPITAL | : | |
| AND/OR UPMC LEE REGIONAL; AND | : | |
| JOHNNIE W. BARTO, M.D. | : | |

Appeal from the Order Entered January 8, 2024
In the Court of Common Pleas of Cambria County
Civil Division at No: 2019-2172

BEFORE: STABILE, J., KING, J., and SULLIVAN, J.

OPINION BY STABILE, J.: **FILED: May 26, 2026**

In these consolidated interlocutory appeals, DLP Conemaugh Memorial

Medical Center, LLC, DLP Healthcare, LLC d/b/a Duke LifePoint Healthcare

(collectively "DLP") and Laurel Pediatrics Associates ("LPA") appeal from an

order consolidating four cases for a single trial. These cases involve different

- 2 -

plaintiffs, different defendants, and individualized allegations of sexual abuse by a now-incarcerated pediatrician. Although these cases involve common questions of law, their consolidation will prejudice each defendant before the jury. We therefore conclude that the trial court abused its discretion by consolidating these cases for trial against DLP and LPA, and we reverse and remand for further proceedings.

On May 14, 2019, five plaintiffs filed a tort action against DLP, LPA, Johnny Barto and other medical defendants alleging that Barto sexually abused the plaintiffs as minors when he was a pediatrician with LPA and held privileges at DLP. Subsequently, the case expanded in size to include over 140 plaintiffs with claims of sexual abuse against Barto spanning the course of several decades. The initial complaint, which serves as the master complaint, has been amended several times. Barto is now serving a prison sentence following his guilty plea to sexually abusing family members and his *nolo contendere* plea to claims of sexual misconduct against his minor patients. The master complaint alleges the same causes of action by all plaintiffs: specifically, childhood sexual abuse and vicarious liability, negligence—hiring/retention, negligent supervision, negligent misrepresentation, intentional infliction of emotional distress, civil conspiracy to protect reputation and finances, medical negligence, violations of Title IX, and corporate negligence.

For most of his medical career, Barto co-owned two private pediatric practices in the Johnstown, Pennsylvania area: Johnstown Pediatric Associates

(owned from 1977-2000) and LPA (2000-2017). Barto also held privileges at different local hospitals at different times, including defendants Conemaugh Memorial Hospital, UPMC Lee Regional Medical Center, and DLP. There is no allegation that any of the hospital defendants owned or were affiliated with either of Barto's practices.

In June 2023, after several years of discovery, plaintiffs filed a motion requesting a case management order in which bellwether cases would be coordinated for all pretrial purposes but tried individually. DLP filed an objection asserting that plaintiffs' claims lacked the commonality and representativeness that is necessary for a bellwether trial protocol and therefore would be inefficient and fundamentally unfair to DLP.

On January 8, 2024, the trial judge, the Honorable Norman A. Krumenacker, III entered an order directing that four bellwether cases be "combined and . . . tried together." Order, 1/8/24.

The Court determined that plaintiffs' bellwether proposal had merit and directed the parties to submit a list of proposed cases for inclusion in the bellwether cases. The court ultimately selected four cases. It chose cases that included stronger and weaker fact patterns against some or all of the defendants. The cases involved claims that spanned multiple years, varied legal theories, and some or all of the defendants. The court hoped that upon completion of discovery, the defendants would file motions for summary judgment, since the selected cases involve stronger and weaker factual allegations against the various defendants. The court hoped resolution of

summary judgment motions would put the parties in a better position to determine how to proceed on remaining claims to avoid the unnecessary duplication of pretrial motions and trials. Cases that remained after summary judgment or severance would proceed to trial, and once a jury verdict was rendered, the court expected the parties to be in a better position to resolve the remaining cases having the benefit of the full pretrial practice, associated rulings, and a jurors' evaluation of the merit of the plaintiffs' claims. The court acknowledged that while the selected cases may not ultimately be proper for joinder, it was the court's intention to select a broad assortment of cases that would provide the court and parties the opportunity to resolve a variety of issues that would arise by way of motion practice and allow them to develop a procedure to move the remaining cases more effectively towards resolution. Trial Court Opinion, 9/5/24 at 3-4. The court did not address whether consolidation would prejudice any party.

On February 6, 2024, DLP applied for reconsideration of the consolidation order, or, in the alternative, for certification of the order for interlocutory appeal under 42 Pa.C.S.A. § 702(b).[1] One day later, LPA timely

---

[1] 42 Pa.C.S.A. § 702(b) prescribes:

> When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

*(Footnote Continued Next Page)*

filed a motion joining in DLP's application. On February 15, 2024, Judge Krumenacker denied reconsideration. On February 26, 2024, Judge Krumenacker recused himself from this case. On March 5, 2024, however, Judge Krumenacker timely certified the case for interlocutory appeal by amending the January 8, 2024 order to include the certification language prescribed in 42 Pa.C.S.A. § 702(b).[2] On March 18, 2024, DLP and LPA timely filed petitions in this Court for leave to take interlocutory appeals from the consolidation order.[3] On June 11, 2024, this Court granted DLP and LPA leave to appeal.

DLP and LPA raise the same question in these appeals, "Whether the trial court abused its discretion in ordering the consolidation for joint trial of the four cases of Plaintiffs BR1, TS 11, AS67, and AP78, where the cases do

---

termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

*Id.* DLP's application was timely under Pa.R.A.P. 1311(b), which requires applications for certification under Section 702(b) to be filed in the trial court within thirty days of the entry of the subject order.

[2] *See* Pa.R.A.P. 1311(b) (authorizing the court to act upon application for certification under Section 702(b) within thirty days after it is filed). None of the parties in this appeal object to the judge's decision to certify this matter for appeal despite previously recusing himself. Therefore, we will not address whether the judge's recusal precluded him from entering a certification order.

[3] *See* Pa.R.A.P. 1311(b) (petition for permission to appeal must be filed in this Court within thirty days after entry of certification order under Section 702(b) in trial court).

not involve common parties or common questions of fact and law, and where consolidation will result in unfair prejudice to [DLP and LPA]?" DLP's brief at 5; LPA's brief at 3.

Pennsylvania Rule of Civil Procedure 213(a) governs the consolidation of actions pending in the same county. It provides:

> In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

*Id.* Consolidation is permissible to avoid "multiple trials and proceedings involving common facts or issues arising from the same transaction or occurrence." Pa.R.C.P. 213, Comment. "The duplication of efforts is a benefit to both the parties and the courts." *Id.* Rule 213 was further promulgated for "the prevention of inconsistent verdicts ... the elimination of trial delays, speedier litigation, and the reduction of expenses for the parties." *Skender v. Skender*, 2023 WL 8598273, *5 (Pa. Super., Dec. 12, 2023) (unpublished memorandum).

When deciding whether to consolidate actions, the court must first examine whether they "involve a common question of law or fact" or "arise from the same transaction or occurrence." Pa.R.Civ.P. 213(a). If this test is met, the court must then determine whether consolidation will prejudice any party. *See Azinger v. Pennsylvania R.R. Co.*, 105 A. 87, 88 (Pa. 1918).

Consolidation is not appropriate when it "would tend to place the objecting party at a disadvantage, or give an undue advantage to his adversary." *Id.*; *see also Malanchuk v. Tsimura*, 137 A.3d 1283, 1288 (Pa. 2016) (observing that *Azinger* remains good law). Another reason not to consolidate cases for trial is because the jury might be influenced by sympathy for the plaintiff. *Cruz v. Roberts*, 2005 WL 4875762, 78 D. & C. 4th 75, 79 (2005)[4] (citing *Balla v. Sladek*, 112 A.2d 156, 159 (Pa. 1955)). Finally, consolidation is improper when it creates the risk of jury confusion. *Cruz*, 78 D. & C. 4th at 79.

We review an order consolidating cases for abuse of discretion or an error of law. *Rogers v. Thomas*, 291 A.3d 865, 893 (Pa. Super. 2023). A key consideration in this analysis is whether consolidation will prejudice the objecting party. *See Balla*, 112 A.2d at 159 (court properly refused to consolidate actions for trial against city and railroads arising out of motor vehicle accident, where "jury might have been influenced by sympathy for the decedent to the prejudice of the defendants"); *see also Skender*, 2023 WL 8598273, *6 (citing *Azinger*, 105 A. at 88 ("The question is one that must necessarily be left to the discretion of the trial judge, and where the issues are the same and they arise out of the same transaction, and it does not

---

[4] While decisions of common pleas courts are not binding precedent, we may consider them for their persuasive authority. *Miller v. Bunting*, 335 A.3d 733, 754 n.19 (Pa. Super. 2025).

appear the trial of the cases together would tend to place the objecting party at a disadvantage, or give an undue advantage to his adversary, the action of the court in ordering the cases tried together will not be reversed")).

Before proceeding further, we note that this appeal involves unique circumstances. We have not found any Pennsylvania appellate decision concerning consolidation of civil actions involving alleged sexual abuse. The only Pennsylvania decision on this subject is the trial court opinion in *Cruz* that we discuss in detail below. Furthermore, we have located only one Pennsylvania appellate decision concerning use of the bellwether case procedure in a mass tort setting, *Ball v. Bayard Pump & Tank Co., Inc.*, 67 A.3d 759 (Pa. 2013). For the reasons provided below, we find *Ball* distinguishable from this appeal. *See* n.6, *infra*.

Presently, the court ordered the following cases consolidated for trial:

Case 1—Jane BR1 Doe contends that Barto sexually abused her when she was 10 years old on a single occasion in 2000 during a sports physical at Johnstown Pediatric Associates. She does not allege any claim against DLP or LPA. Plaintiffs' Fourth Amended Complaint at ¶¶ 73-84.

Case 2—Jane TS11 Doe, Jane BR1 Doe's sister, contends that her mother told her that Barto sexually abused her as an infant on a single occasion in 2000 or 2001 at an urgent appointment for an earache. She has no recollection of the alleged event. She asserts a claim against LPA but not against DLP. *Id.* at ¶¶ 163-72.

Case 3—Jane AS67 Doe contends she was a patient at LPA for approximately fourteen years until 2016 and that Barto conducted invasive genital and/or breast examinations at her appointments and alleges an abusive and erroneous vaginal examination on one occasion. She asserts claims against DLP and LPA. Notice Of Adoption Of Master Complaint For Jane AS67 Doe.

Case 4—Jane AP78 Doe also contends that Barto conducted invasive genital and/or breast examinations at her appointments between 2000 and 2015. She asserts claims against DLP and LPA. Notice Of Adoption Of Master Complaint For Jane AP78 Doe.

The four actions here do not arise from the same transaction or occurrence; they arose at different times and places over a period of sixteen years.

Turning to whether these actions "involve a common question of law or fact," the use of "or" demonstrates that this standard is satisfied if the actions involve a common question of fact **or** a common question of law. The four actions do not involve common questions of fact. In *Cruz*, *supra*, two cases were filed in Lancaster County involving alleged abuse of two different minors at the same day care center and by the same employee. One minor allegedly was assaulted several times in 1992 or 1993, while the other allegedly was assaulted in 2002. The plaintiffs in these actions moved to consolidate them for trial. The court held that consolidation for trial was inappropriate because there were no common questions that warranted consolidation, even though both minors alleged abuse by the same perpetrator. The court reasoned:

> At issue in the cases is not the assault of one girl, but two. In addition, these assaults occurred approximately a decade apart and would undeniably involve differing factual scenarios. Furthermore, the questions regarding the defendants' awareness of [the employee's] propensity to assault children relate to two separate and distinct events and time periods.

*Id.*, 78 D. & C. 4th at 79-80. Here, as in *Cruz*, the four cases joined in the present case do not share a common question of fact, because Barto's alleged

- 10 -

assaults against the four plaintiffs took place at different times over a sixteen-year period and in different locations. Moreover, as in **Cruz**, DLP's and LPA's awareness of Barto's propensity to assault the four children relate to separate and distinct events and time periods—so separate and distinct, in fact, that DLP is not a defendant in two of the four cases and LPA is not a defendant in one of the four cases.

On the other hand, the four actions involve common questions of law. The plaintiffs in all four actions allege the same causes of action, so the same legal standards will come into play in each case to determine questions of liability. Moreover, the ultimate legal question in each case is the same: whether the defendants knew or should have known about Barto's alleged conduct. *Cf. Garrity v. Governance Board of Cariños Charter School*, 2020 WL 5074385, *2 (D.N.M. 2020)[5] (separate actions brought on behalf of two minor plaintiffs against school board and its CEO alleging that CEO assaulted and groomed them at different times; while court ultimately ruled against consolidation, it held that cases involved similar legal issues under constitutional law and Title IX). Given the overlap in legal issues, we conclude that one of the tests for consolidation is satisfied.

_____

[5] Although decisions from lower federal courts are not binding precedent, we may consider them for their persuasive authority. *Okeke-Henry v. Southwest Airlines, Co.*, 163 A.3d 1014, 1017 n.4 (Pa. Super. 2017).

Nonetheless, although common questions of law exist, we conclude that consolidation of these cases is improper because of the risks to DLP and LPA of prejudice and jury confusion.

In **Cruz**, the trial court reasoned that prejudice would occur by consolidating different cases involving emotionally charged but different allegations of abuse to minors. The court explained:

> By trying the two matters together, the jury might wrongly conclude that the defendants knew, or at least should have known, of that prior assault. Upon hearing that a young girl was previously assaulted by the same man who then assaulted another young girl, a jury could be improperly swayed and/or confused by such information. More likely, the defendants will be prejudiced by such evidence, regardless of how this court instructs the jury to view the evidence. Once a jury hears of the 1992/1993 assault, knowledge of that incident might be imputed onto all of the defendants, thereby prejudicing the defendants in relation to the 2002 incident. Therefore, this court cannot consolidate the matters for trial.

*Id.*, 78 D. & C. 4th at 80. If consolidation will prejudice any party, the court should not order consolidation, even if the "commonality of law or fact questions otherwise abounds." *Id.* at 79; *see also Garrity*, 2020 WL 5074385, at *4 (finding that consolidation will prejudice defendants because, *inter alia*, "the potential that a jury may impute certain facts from one case to the other is too high for the Court to ignore").

This same rationale defeats consolidation here. The trial court explained in its Pa.R.A.P. 1925(a) Opinion that it believed consolidation of these cases would promote judicial efficiency. The court stated that the four cases were "bellwether cases" through which "the Court and parties could resolve

common issues and motions in a manner that would better inform the parties' actions moving forward on the remaining cases." Pa.R.A.P. 1925 Opinion, 9/6/24, at 2. The court completely failed, however, to consider whether consolidation would prejudice the defendants.

We believe that consolidation presents a distinct danger of prejudice to DLP and LPA. The four lawsuits name different defendants and allege sexual assaults over a sixteen-year period. The jury will have to keep track of what evidence applied to what party during what period of time. This ultimately may create the potential for errors to be made in terms of liability and damages. Moreover, the jury's sympathy will lie with the plaintiffs, because they each will present emotionally charged accounts of heinous crimes that they allegedly suffered as minors. Presenting four such cases in a single trial will expose the defendants to the serious risk of guilt by association and also raise the possibility that the jury will confuse which evidence applies to which defendant. Although the plaintiffs suggest that the court will eliminate any prejudice through limiting instructions, we are not confident that limiting instructions will alleviate prejudice or promote judicial efficiency in such a highly emotional setting. *See Dashnaw v. Usen*, 2006 WL 1742174, \*4 (N.D.N.Y. 2006) (court denied consolidation of separate sexual harassment actions brought by two plaintiffs against their employer and its employees; if cases were consolidated, one plaintiff might bolster her claims by evidence relating to the other plaintiff, thus prejudicing one of the individual defendants

through "bootstrapping" and requiring "innumerable jury instructions just to keep the jury from lumping the particular facts into one sum").

Consolidation also is improper due to the risk of jury confusion. In **Cruz**, the court observed that consolidation should not take place when it might result in "over-complication of issues." **Id.** at 79 (citing **Limbert v. Sealview Plastics Inc.**, 17 Pa. D. & C. 2d 785, 786 (1959)). **Cruz** went on to hold that consolidation was improper because "[a] single jury, hearing both matters, might be confused by the unusual and significant chronological separation between the two alleged incidents." **Id.** at 80. As stated above, one plaintiff was allegedly assaulted in 1992-93, while the other was allegedly assaulted in 2002.

The same danger of jury confusion exists here, perhaps to an even greater degree that in **Cruz**. The trial court admitted that the four bellwether cases "include[] stronger and weaker fact patterns against some or all of the Defendants. The selected cases involved claims that spanned multiple years, varied legal theories, and some or all of the Defendants." Opinion at 3. Moreover, there are six separate defendants in this lawsuit, each of whom represents disparate time periods and discrete issues not universal to all defendants. The claims brought by individual plaintiffs against each Defendant are based on distinct sets of facts. A proposed special verdict form under this scenario may necessarily be long and extraordinarily complex. All

of these factors counsel against consolidation in the manner contemplated by the trial court.

In sum, the prejudice and confusion that consolidation will cause leads us to conclude that the order of consolidation constitutes an abuse of discretion by the trial court. We therefore vacate the consolidation order as to DLP and LPA and remand for further proceedings.[6]

_____

[6] We also find it helpful to distinguish this appeal from **Ball**, the only other Pennsylvania appellate decision we can find concerning the use of a bellwether case procedure. In **Ball**, forty-five residents brought a toxic tort action against a gasoline station and other affiliated businesses alleging that gasoline and vapor from a widespread underground leak had entered their homes, causing property damage and physical illness. The trial court issued an order severing the cases of four bellwether plaintiffs for trial in reverse bifurcated fashion, with exposure, causation and damages to be tried first followed by a separate trial on liability, if necessary. The plaintiffs objected to the severance portion of the order but not the bifurcation portion. The trial court determined that severance would avoid prejudice, because

> the Defendants would suffer by allowing the Plaintiffs to bolster each individual claim with the mere fact that [forty-one (41)] other claims had been filed (albeit with different injuries and different property locations) … Clearly, the 'spill-over' effect of dozens of Plaintiffs alleging exposure and claims of injury, distress, disease, fear, and property damage would have had an insurmountable prejudicial effect on the Defendants.

**Id.**, 67 A.3d at 764 (citing trial court opinion). Following the exposure-causation-damages trial, the jury found that none of the bellwether plaintiffs had suffered injury or damages attributable to the gasoline leak. Our Supreme Court held that the trial court acted within its discretion in severing the cases and assigning four bellwether plaintiffs. The Court reasoned that the trial court "carefully considered a host of factors relevant to determining whether severance of the test cases was warranted under Rule 213(b) for convenience and avoidance of prejudice." **Id.** at 769.

*(Footnote Continued Next Page)*

Order vacated as to DLP and LPA. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

5/26/2026

---

The important distinction between **Ball** and the present case is that while the trial court in **Ball** considered a "host of factors," including prejudice, in reaching its decision, the trial court herein failed to examine the question of prejudice, which our Supreme Court has held is an essential criterion in the consolidation analysis. **See Balla**, **Azinger**, **supra**.