889 A.2d 550

**INSURANCE FEDERATION OF PENNSYLVANIA, INC., Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF INSURANCE, Diane Koken, Insurance Commissioner, Appellee.**

Supreme Court of Pennsylvania.

Argued May 12, 2004.

Decided Dec. 30, 2005.

---

John F. Mizner, David F. Dieteman, James R. Walczak, Erie, for Ins. Federation of Pa., appellant.

Christine P. Busch, Media, for Pa. Defense Institute, appellant amicus curiae.

Michael Richard Nelson, Blue Bell, Peter A. von Mehren, Philadelphia, Mark Henry Roseberg, Blue Bell, for Alliance of America Insurers, appellant amicus curiae.

Amy Griffith Daubert, Harrisburg, Steven Burgess Davis, Philadelphia, W. Christopher C. Doane, Terrance A. Keating, for Diane Koken, Ins. Com'r, appellee.

Michael J. Foley, Scranton, Dale G. Larrimore, Philadelphia, for Pa. Trial Lawyers Ass'n, appellee amicus curiae.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

The seeds of this case were planted in August, 1996, when Liberty Mutual Insurance Company[1] filed a revision to its private passenger insurance policy for uninsured motorist ("UM") and underinsured motorist ("UIM") coverage with the Pennsylvania Insurance Department. The proposed revision would have eliminated the policy's arbitration provision, resulting in all UM and UIM claims disputes being resolved in the courts. The proposed changes were published in the Pennsylvania Bulletin and comments were received. The Insurance Department rejected the proposed revision and issued a letter, which stated removal of the arbitration provi-

---

1. Liberty Mutual Insurance Company is not a party to the current appeal, but is a member of the Insurance Federation of Pennsylvania.

sion violated the requirements of 31 Pa.Code § 63.2 (extent of coverage to be offered) as to UM coverage. Liberty Mutual did not challenge the decision of the Department.

Instead, the Insurance Federation of Pennsylvania, Inc. filed a petition for declaratory judgment before the Department. The Federation sought an order declaring the Department did not have the authority to require mandatory arbitration of UM and UIM coverage disputes. On July 16, 2001, the Insurance Commissioner issued a declaratory opinion and order, holding that the Department may disapprove automobile insurance policies not requiring binding arbitration of UM and UIM disputes. Declaratory Opinion and Order, 7/16/01, Brief for Appellant, at appendix 19–27.

The Federation appealed to the Commonwealth Court, which affirmed the Insurance Commissioner's decision. *See Insurance Federation of Pennsylvania, Inc. v. Diane Koken, Insurance Commissioner,* 801 A.2d 622 (Pa.Cmwlth.2002) (*en banc*). President Judge Colins, writing for the majority, opined that *Prudential Property and Casualty Insurance Co. v. Muir,* 99 Pa.Cmwlth. 620, 513 A.2d 1129 (1986), controlled the outcome of the case. In *Muir,* the Insurance Commissioner rendered a decision disapproving Prudential's UM policy form, which deleted or modified the arbitration clause, on the basis that the deletion resulted in the form falling short of that required by the Department's regulations. Prudential appealed, arguing the Department did not have authority to promulgate a regulation requiring an arbitration clause be included in an insurance contract pursuant to the Uninsured Motorist Clause Act ("UM Act"), 40 P.S. § 2000. *Muir,* at 1129. The court held that "the Insurance Department had the implied authority to promulgate the regulation in question, which authority is derived from the statutory duty to enforce the UM Act by approving only those policies which provide proper protection to the victims of uninsured motorists." *Id.,* at 1130.

Judge Pellegrini concurred in the result, opining he was bound by the doctrine of *stare decisis,* and thus *Muir* dictated the outcome. However, he wrote separately to argue the court's decision in *Muir* was incorrect. Judge Simpson filed a

dissenting opinion, which Judge Cohn joined, stating he "be-lieve[d] that mandatory arbitration of [UM] and [UIM] dis-putes violates the constitutional right to a jury trial." *Insurance Federation*, at 634 (Simpson, J., dissenting).

We granted allowance of appeal to answer the following questions:

1. Whether the Insurance Department possesses the statu-tory authority to require that all UM and UIM disputes be submitted to mandatory, binding arbitration.

2. Whether the issue of whether the Insurance Depart-ment's imposition of mandatory, binding arbitration upon uninsured and underinsured motorist disputes violates the constitutional right to a jury trial of both insurers and insurance consumers was waived, and if not, whether the imposition of such arbitration, in fact, violates the constitu-tional right to a jury trial.

The standard of review when determining the validi-ty of an agency adjudication is whether there has been an error of law, whether constitutional rights have been violated, or whether the agency's factual findings are supported by substantial evidence. 2 Pa.C.S. § 704; *Bowman v. Dept. of Environmental Resources*, 549 Pa. 65, 700 A.2d 427, 428 (1997). The scope of such review is plenary, as it involves a question of law. *Continental Ins. Co. v. Schneider, Inc.*, 582 Pa. 591, 873 A.2d 1286, 1291 (2005).

The Pennsylvania Constitution confers the legislative power in the Commonwealth solely to the General Assembly, Pa. Const. art. II, § 1, and "no law shall be passed except by bill. . . ." Pa. Const. art. III, § 1. Under the non-delegation doctrine, "the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority.' " *Blackwell v. State Ethics Commission*, 523 Pa. 347, 567 A.2d 630, 636 (1989) (citations omitted). However, "the Legislature may delegate policy making authority to an administrative agency, so long as the Legislature makes the 'basic policy choices' and establishes 'adequate standards which will guide and restrain the exercise

of the delegated administrative functions.' " *Whitlatch v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing,* 552 Pa. 298, 715 A.2d 387, 389 (1998) (quoting *Sullivan v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing,* 550 Pa. 639, 708 A.2d 481, 484–85 (1998)); *see Blackwell,* at 637. In 1921, the General Assembly established the Insurance Department, and charged it with the execution of the laws of this Commonwealth relating to insurance. 40 P.S. § 41.

The General Assembly has enacted laws requiring all non-exempt vehicles to be registered with the Commonwealth. 75 Pa.C.S. § 1301(a). In order to register a vehicle, an applicant must file a "self-certification of financial responsibility," including the name of the insurance company and the applicant's insurance policy number. *Id.,* § 1305(d). The legislature has also required, pursuant to the Insurance Department Act of 1921, that all policies for insurance be approved by the Insurance Commissioner. 40 P.S. § 477b.[2]

In 1963, the General Assembly enacted the UM Act; it requires all insurance policies issued in Pennsylvania to include a provision, approved by the Insurance Commissioner, for UM coverage, unless that coverage is expressly rejected by the insured. *Id.,* § 2000(a). Pursuant to this provision, the Insurance Department promulgated certain regulations, one of which states, "[t]he extent of the coverage which shall be offered as 'Uninsured Motorist Coverage' shall be at least that coverage contained in the sample form in Exhibit C. . . ." 31 Pa.Code § 63.2(a).[3] Exhibit C, located in § 63.2, is a sample insurance contract for UM coverage, which sets forth the minimum requirements an insurance company must offer

---

**2.** Section 477b of the Insurance Department Act states, in pertinent part:

> It shall be unlawful for any insurance company . . . to issue, sell, or dispose of any policy, contract, or certificate, covering . . . contracts of insurance . . . until the forms of the same have been submitted to and formally approved by the Insurance Commissioner.
>
> *Id.*

**3.** This regulation does not refer to UIM coverage.

in its minimum coverage plan. Paragraph 8 of Exhibit C states:

> *Arbitration.* If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of either, *the matter or matters upon which such person and the company do not agree shall be settled by arbitration* in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. *Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement.*

*Id.,* § 63.2 (Exhibit C, paragraph 8) (emphasis added).

In 1984, the Motor Vehicle Financial Responsibility Law ("MVFRL") was passed; it sets the standards for what must be included in an automobile insurance policy in Pennsylvania. 75 Pa.C.S. § 1701 *et seq.* Regarding UM and UIM coverage, it states, "[n]o motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth ... unless uninsured motorist and underinsured motorist coverages are offered therein...." *Id.,* § 1731(a). Although insureds are not required to carry UM and UIM coverage, *id.,* each must be offered to all insureds and be explicitly waived by them. Thus, pursuant to the MVFRL and the Insurance Department Act, a policy must include a provision for UM and UIM insurance in order to be approved by the Insurance Commissioner.

The Federation argues the Insurance Commissioner exceeded the authority granted to her and the Insurance Department by the General Assembly by requiring mandatory binding arbitration for UM and UIM disputes. This Court has recently clarified the dictates of an agency's authority in *Commonwealth v. Beam,* 567 Pa. 492, 788 A.2d 357 (2002):

This Court has long adhered to the precept that the power and authority exercised by administrative agencies must be conferred by legislative language that is clear and unmistakable. At the same time, we recognize that the General Assembly has prescribed that legislative enactments are generally to be construed in such a manner as to effect their objects and promote justice, see 1 Pa.C.S. § 1928(c), and, in assessing a statute, the courts are directed to consider the consequences of a particular interpretation, as well as other factors enumerated in the Statutory Construction Act. Based upon such considerations, the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates.

*Id.,* at 359–60 (internal citations & footnote omitted).

The General Assembly did not grant the Insurance Department the express authority in either the UM Act or the MVFRL to require mandatory binding arbitration for UM and UIM claims. Thus, we must determine whether the Insurance Department has the implied authority to promulgate a regulation requiring insurance contracts to contain an arbitration provision.

UM and UIM coverages are provided in order to protect victims injured by uninsured and underinsured motorists. *See* 75 Pa.C.S. § 1731(b), (c). In *Muir,* the Commonwealth Court stated that "the best way to aid such innocent victims is to provide them with whatever proceeds to which they are entitled as quickly as possible." *Muir,* at 1130. The court deferred to the Insurance Commissioner's expertise and accepted his assertion that "arbitration provides the most expeditious manner, as well as the least expensive, of accomplishing this salient goal." *Id.*

Salient or not, the public policy underlying the enactment of the MVFRL does not create an implied legislative mandate allowing the Insurance Department to change the normal course of judicial proceedings simply because arbitration is less costly and less time-consuming than traditional litigation.

*See* 42 Pa.C.S. § 7361 (dealing with compulsory arbitration, stating "[a]ny party to a matter shall have the right to appeal for trial de novo in the court.").

██ "[A]uthority may be given to a government official or administrative agency to make rules and regulations to cover *mere matters of detail for the implementation of a statute.* ...." *Sullivan,* at 485 (emphasis added) (quoting *Ruch v. Wilhelm,* 352 Pa. 586, 43 A.2d 894, 897 (1945)). However, "where the statute itself is lacking in essential substantive provisions the law does not permit a transfer of the power to supply them, for the legislature cannot delegate its power to make a law." *Id.* Neither the MVFRL nor the UM Act contains the substantive provision of the law requiring mandatory binding arbitration. The Legislature delegated to the Insurance Department and the Commissioner the authority to approve or reject all insurance contracts. *See* 40 P.S. § 477b. By enacting a regulation which mandates that all UM and UIM coverage disputes be subject to mandatory binding arbitration, the Insurance Department exceeded its express and implied authority; we find the regulation in question covers more than "mere matters of detail for the implementation of [this] statute." *Sullivan,* at 485. Thus, we hold the Insurance Department overstepped its legislative mandate in requiring mandatory binding arbitration in UM and UIM disputes.

Because we hold that the Department does not possess the authority to require mandatory binding arbitration for UM and UIM disputes, we need not address the second question. The Commonwealth Court's decision is reversed and the decision in *Muir* is hereby overruled. Jurisdiction relinquished.

Chief Justice CAPPY, Justice NIGRO, Justice NEWMAN and Justice BAER join the opinion.

Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR, dissenting.

In *Burstein v. Prudential Property and Cas. Ins. Co.,* 570 Pa. 177, 809 A.2d 204 (2002), I expressed the view that, in experimenting over the years with various regulatory schemes

designed to further the remedial purpose of ensuring available compensation to victims of motor vehicle accidents in a cost efficient manner, the Legislature left a fairly wide range of detail open to development and refinement by the Insurance Department, as the administrative agency with specialized expertise in the complex arena of insurance regulation. *See id.* at 219–20, 809 A.2d at 230 (Saylor, J., dissenting). At the same time, via delegation to the Department of the power to approve uninsured motorist provisions in motor vehicle insurance policies, *see* Act of August 14, 1963, P.L. 909 § 1 (as amended, 40 P.S. § 2000), and in subsequent legislation, the General Assembly enabled the Department to fill gaps concerning, *inter alia*, the particular requirements of insurance offerings, in effect, granting the authority to make substantive rules having the force and effect of law and entitled to the usual presumption of reasonableness and validity. *See id.* (citing *Borough of Pottstown v. Pennsylvania Mun. Retirement Bd.*, 551 Pa. 605, 609–10, 712 A.2d 741, 743 (1998)). Further, the Department has been given the tools to monitor the degree to which its regulations operate to further the objectives of the governing statutes, in light of continuing industry experience and other salient factors. *See id.*

I believe that the Department has implemented its broad authority under the governing statutes with the making and maintenance of its 1963 substantive regulation requiring mandatory arbitration of uninsured motorist disputes between insurers and their insureds, via reference to a national standard form for uninsured motorist insurance containing, *inter alia*, a mandatory arbitration clause, *see* 31 Pa.Code § 63.2, as well as its extension of an identical requirement to underinsured motorist claims.[1] Significantly, the Department's regulation, with highly visible consequences, has stood intact throughout several decades of continuing changes to the gov-

---

1. It is a different question, beyond the limited scope of this appeal, whether the Legislature possessed the ability to accomplish such a broad delegation consistent with the non-delegation doctrine embodied in Article II, Section 1 of the Pennsylvania Constitution, PA. CONST art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.").

erning statutory scheme, thus, in my view, strongly indicating legislative acquiescence and approval.[2]

I do not denigrate the concerns of Appellant or its *amicus* regarding flaws in the present arbitration practice that are outside the range of matters amenable to correction in the limited judicial review available in the arbitration setting, and that merit serious consideration by the Insurance Department in its ongoing review of the appropriate regulatory approach, as well as by the Legislature in its overarching role. Further, I do not discount that the appropriate response may at some point entail consideration of the possibility of modifications to the scheme to increase judicial involvement and oversight. I simply would not invalidate the Department's present approach on the ground that it is *ultra vires*.

The second issue concerns Appellant's assertion of a right to a jury trial in the uninsured and underinsured motorist setting. On this point, I agree with the Insurance Commissioner that the fairly formalistic analysis established in early decisions of this Court and followed in *Wertz v. Chapman Twp.*, 559 Pa. 630, 741 A.2d 1272 (1999), and *Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 824 A.2d 1153 (2003), requiring a determination of whether the particular cause of action was within the contemplation of the framers of the 1790 Constitution, *see Wertz*, 559 Pa. at 639–40, 741 A.2d at 1277, must also control here and forecloses relief, given the relative recency of the UM and UIM concepts.

Accordingly, I respectfully dissent.

Justice CASTILLE joins this dissenting opinion.

2. *See Gilligan v. Pennsylvania Horse Racing Comm'n*, 492 Pa. 92, 99, 422 A.2d 487, 491 (1980) (citing *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974) ("[A] court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration. This is especially so where Congress has re-enacted the statute without pertinent change."); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (recognizing the "venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction.")).