NEALON, J.,
The parties ’ submissions in this automobile accident litigation concern the issue of whether a plaintiff’s third party liability claim and underinsured motorist (UIM) claim may be tried in a *329 single proceeding before the same jury, and if so, what instructions should be provided to the jury regarding the named parties and the questions to be decided by the jury. Since the liabilities of the tortfeasor and the UIM insurer for damages arise from the same factual background and involve common questions of law and fact, plaintiff’s liability and UIM claims will be consolidated for a single trial pursuant to Pa.R.C.P. 2229(b). Moreover, inasmuch as the identification of the UIM insurer as a real party in interest and a potential provider of UIM coverage does not introduce evidence of the tortfeasor’s liability insurance in violation of Pa.R.E. 411, the UIM carrier will be identified as a named defendant furnishing prospective UIM coverage so that the jury will understand the participating UIM insurer’s status as an adverse party to the plaintiff.
However, the questions of plaintiff’s residency and her entitlement to UIM benefits under her grandparents’ policy with the UIM insurer do not arise out of the same occurrence or involve common questions of law or fact as the parties’ liability and damages issues, and as such, are not amenable to complete joinder. Therefore, the trial will be bifurcated pursuant to Pa.R.C.P. 213(b) with the jury first addressing the merits of plaintiff’s personal injury claim and rendering a verdict on the liability and damages issues. If the jury awards damages in excess of the tortfeasor’s liability insurance policy limits, thereby triggering UIM coverage, a second phase of the trial will be conducted to determine whether plaintiff was a resident of her grandparents’ home at the time of the accident so as to be entitled to UIM benefits under the UIM carrier’s policy. In the event that the jury awards damages in an amount less than the tortfeasor’s liability insurance policy limits, the issue of plaintiff’s residency and the applicability of *330 her grandparents’ UIM coverage will be rendered moot.
I. FACTUAL BACKGROUND
Plaintiff, Jessica Kujawski (“Kujawski”), commenced this civil action against defendants, Joseph Fogmeg (“Fogmeg”) and Allstate Insurance Company (“Allstate”), as a result of an automobile accident which occurred on June 4,2010, when Kujawski was a passenger in a vehicle operated by an uninsured motorist, Stephanie Williams. (Docket entry no. 1 at ¶¶ 1-8). Kujawski contends that Fogmeg negligently caused the accident by failing “to stop his vehicle at a clearly marked stop sign” and crashing “into the side of Ms. Williams’ vehicle. (Id. at ¶ 9-10). Kujawski seeks to recover economic and noneconomic damages from Fogmeg for negligently causing her injuries, and further demands underinsured motorist (UIM) benefits from Allstate on the ground that Fogmeg’s liability insurance coverage is inadequate to fully compensate Kujawski for her accident-related losses.[1] (Id attf 18-46, 77-83).
Allstate does not dispute Fogmeg’s negligence in causing the accident, but “is contesting the factual cause and severity of [Kujawski’s] claimed injuries.” (Docket entry no. 33 at p. 1). “Allstate also submits that [Kujawski] was not an Allstate insured at the time of the accident as she was not residing with the named Allstate insureds, *331 Richard and Marion Pehanich.” (Id.). As a result, Allstate asserts that Kujawski “is not entitled to underinsured motorist benefits” under Allstate’s policy.[2] (Id.).
After Kujawski filed a Certificate of Readiness and the court administrator scheduled a status conference before the undersigned on March 6,2015, this matter was scheduled for a jury trial beginning on May 11, 2015. (Docket entry nos. 26-28). By order dated March 6,2015, the parties were directed to submit memoranda of law “setting forth their positions with respect to: (a) whether [Kujawski’s] third party liability and underinsured motorist (UIM) claims may be tried in a single proceeding before the same jury; (b) what instructions should be provided to the jury by the court if the liability and UIM claims are consolidated for a single trial; and (c) what factual issues should be decided by the jury if the liability and UIM claims are joined for a single trial.” (Docket entry no. 28). Kujawski and Allstate submitted their briefs on April 2,2015, and April 6,2015, respectively, and Fogmeg filed his brief on April 9, 2015.
Kujawski maintains that the liability and UIM claims should be litigated in a single trial since they both “involve the same operative facts,” “the same witnesses,” “the same causation issues” and “the same testimony.” (Docket entry no. 32 at p. 9). “Allstate has no objection to the third party and underinsured motorist claims being tried in a single *332 proceeding before the same jury.” (Docket entry no. 33 at p. 2). “Allstate also has no objection to Allstate being listed as a party on the caption at the time of trial.” (Id.).
Fogmeg opposes a joint trial of the liability and UIM claims, and argues that “[t]he evidence that must be offered by [Kujawski] in support of her UIM claim is wholly irrelevant to the underlying liability claim against defendant Fogmeg.” (Docket entry no. 35 at p. 4). Fogmeg submits that the tort and UIM claims should be bifurcated pursuant to Pa.R.C.P. 213(b), which empowers the court to order a separate trial of claims or issues “in furtherance of convenience or to avoid prejudice,” and requests that the jury first decide the liability and damages issues, and “[i]n the event that [Kujawski] damages exceed the policy limits of defendant Fogmeg,” then proceed to a second phase of the trial before the same jury to decide Kujawski’s “status as a resident relative.” (Id. at p. 5). More importantly, Fogmeg contends that during the proposed first phase of the trial, Kujawski “should be precluded from mentioning the UIM claim and the existence of the UIM policy” and “Allstate should be removed from the case caption to avoid the risk that defendant Fogmeg will be unfairly prejudiced by the premature introduction of evidence regarding insurance coverage.” (Id.).
With regard to the instructions to be furnished to the jury, Kujawski “requests that this court follow the jury instructions given by this court in Moritz v. Horace Mann Property & Casualty Insurance Company, 2014 WL 5817681 (Lacka. Co. 2014).” (Docket entry no. 32 at p. 11). Since the instructions in Moritz were applicable to a case in which UIM coverage was undisputed and the claimant had already received payment of the tortfeasor’s *333 liability insurance policy limits, Allstate asserts that the portions of the Moritz charge discussing stipulated UIM coverage and the prior payment of liability insurance limits should be redacted from the jury instructions in this case. (Docket entry no. 32 at pp. 2-3). Fogmeg contends that regardless of whether his requested bifurcation is granted, “the jury instructions should not include any language referencing the existence of Allstate as [Kujawski’s] UIM carrier” since Fogmeg would be “severely prejudiced by introducing evidence of insurance in a manner expressly frowned upon by Pa.R.E. 411.” (Docket entry no. 35 at p. 6).
II. DISCUSSION
(A) JOINDER OF LIABILITY AND UIM CLAIMS FOR TRIAL
Prior to 2005, jury trials were not conducted in claims for uninsured motorist (UM) or underinsured motorist (UIM) benefits since those disputes were subj ect to binding arbitration due to Pennsylvania Insurance Department regulations mandating insurance policy language requiring arbitration of UM/UIM claims. Moritz, supra, at *2 (citing Ronca & Sloane, Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law at pp. 6-14 to 6-20 (3d ed. 2013)). In Insurance Federation of Pennsylvania, Inc. v. Koken, 585 Pa. 630, 889 A.2d 550 (2005), the Supreme Court of Pennsylvania overruled Prudential Property and Casualty Insurance Company v. Muir, 99 Pa. Cmwlth. 620, 513 A.2d 1129 (1986), and held that the Insurance Department does not have the express or implied authority to require binding arbitration of UM/ UIM claims. Koken, 585 Pa. at 637-638, 889 A.2d at 555. “In the wake of Koken, insurance policies now make *334 arbitration of UM/UIM disputes optional or conditioned upon the insurer’s consent, as a result of which UM/UIM claims are being litigated in court proceedings.” Bingham v. Poswistilo, 24 Pa. D. & C. 5th 17, 24 (Lacka.Co.2011).
Some post-Koken insurance policies have expressly deleted their UM/UIM arbitration provisions in their entirety, see, e.g., Moritz, supra, at *2, or require the consent of all parties as a condition precedent to UM/UIM arbitration. See Bingham, supra. The UIM provisions of Allstate’s policy state that if Allstate and the claimant do not agree “on that person’s right to receive damages” or “the amount of those damages,” then “upon the written request of either party the disagreement will be settled by arbitration as provided under the Pennsylvania Uniform Arbitration Acts 1927 and 1980.” (Docket entry no. 34 at p. 19). Consequently, if either Kujawski or Allstate had requested the submission of their UIM dispute to arbitration, Kujawski’s UIM claim would have been subjected to statutory arbitration. Apparently, neither Kujawski nor Allstate demanded arbitration of Kujawski’s UIM claim since that claim is at issue in this litigation.
Pennsylvania Rule of Civil Procedure 2229(b) governs the permissive joinder of defendants, and states that “[a] plaintiff may join as defendants persons against whom the plaintiff asserts any right to relief jointly, severally, separately or in the alternative...arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action.” Pa.R.C.P. 2229(b). Since Rule 2229(b) uses the disjunctive word “or” in the phrase “right to relief jointly, severally, separately or in the alternative,” and UIM *335 coverage is triggered once the plaintiff’s damages exceed the coverage limits of the tortfeasor’s liability insurance protection, a UIM carrier may be “separately” liable for the plaintiff’s damages that are in excess of the applicable liability insurance coverage. Bingham, 24 Pa. D. & C. 5th at 36. In addition, Pa.R.C.P. 213(a) permits trial courts to order a joint trial “of any matter in issue” and to “make orders that avoid unnecessary cost or delay.” Fravnert v. Delaware & Hudson Railway Company. Inc., 26 Pa. D. & C. 5th 176,183 (Lacka. Co. 2012).
Several Pennsylvania trial courts have allowed consolidation of tort and UIM claims under Rule 2229(b) on the grounds that both claims arise out of the same occurrence and present common questions of fact affecting the defendants’ liabilities. See Foster v. Naresh, 2013 WL 9904109, at *4 (Schuylkill Co. 2013) (citing Bingham, supra); Bingham, 24 Pa. D. & C. 5th at 29-31 (collecting cases). Other trial courts have favored severance of liability and UIM claims pursuant to Pa.R.C.P. 213(b) on the basis that any reference to underinsurance in a consolidated trial would violate Pa.R.E. 411. See Megert v. Stanbaugh, 2010 WL 231525, at *5 (Adams Co. 2010); Baptiste v. Strobel, 2009 WL 3793590, at *3 (Butler Co. 2009). Fogmeg contends that the joinder of Kujawski’s liability and UIM claims in a single trial will cause Fogmeg to “be unnecessarily prejudiced by the admissibility of evidence that [Kujawski] was insured at the time of the accident, which would not otherwise be permitted under Pa.R.E. 411.” (Docket entry no. 35 at p. 4).
Although Pennsylvania Rule of Evidence 411 generally provides that “[e]vidence that a person was or was not insured against liability is not admissible to prove whether *336 the person acted negligently or otherwise wrongfully,” it further states that “the court may admit this evidence for another purpose....” Pa.R.E. 411. Since reference to insurance in the context of a UM/UIM benefits trial does not introduce evidence of liability or indemnity insurance in contravention of Rule 411, we reasoned in Bingham that “Pennsylvania trial courts may join and try tort and UIM claims in a single action without running afoul of Pa.R.E. 411,” and that “the trial court may consider evidence of insurance as being ‘offered for another purpose’ under Rule 411 and allow the UIM insurer to be identified, and the tort and UIM issues to be decided jointly, based upon carefully crafted instructions to the jury.” Bingham, 24 Pa. D. & C. 5th at 44. However, the defense objection to the joinder in Bingham was raised at the pleadings stage by way of preliminary objections, and we merely “conclude [d] that tort actions and UIM claims may be joined in a single proceeding, at least for pre-trial purposes,” and that “the judge to whom the consolidated matter is assigned for trial will ultimately determine whether to sever the tort and UIM claims for separate jury trials or to try them as consolidated claims via one of the options identified above.” Id. at 44-45. Two years later, the Superior Court of Pennsylvania resolved the application of Pa.R.E. 411 in a jury trial where liability and UIM claims are joined for a single trial, and held that “a course of action identifying [the UIM insurer] as a party would not necessarily run afoul of...Rule 411” in such a trial. Stepanovich v. McGrow, 78 A.3d 1147, 1150 (Pa. Super. 2013), app. denied, 89 A.3d 1286 (Pa. 2014).
Other jurisdictions are divided in their approaches to the joinder of tort and UIM claims and the associated issues of whether the UIM insurer should remain identified as a *337 named party, and whether the jury should be furnished with any explanation concerning the UIM carrier’s involvement and participation. See Bingham. 24 Pa. D. & C. 5th at 32-34 (reviewing the decisions of 33 other states, and stating that 27 jurisdictions allow joinder of UM/UIM claims with civil actions against tortfeasors, while 6 states favor severance of UM/UIM claims from tort actions). Those states which favor severance, as advocated by Fogmeg, do not permit the UIM carrier to even be identified during the trial. See, e.g., Heflin v. Merrill, 154 So. 3d 857, 861 (Miss. 2014) (“We see no reason for the jury to be informed of Nationwide’s role as [plaintiffs] underinsured motorist insurer.”). Jurisdictions favoring consolidated trials have concluded that the concealment of the identity of the real party in interest, i.e., the UIM insurer, promotes “charades” and harms “the integrity of the jury system” in trials involving tort and UIM claims. See, e.g, Earle v. Cobb, 156 S.W.3d 257, 261 (Ky. 2005) (reasoning that if the identity of the UIM carrier is not disclosed, “the jury is left to speculate about the exact role of plaintiff’s carrier in the lawsuit, perpetuating the ‘charades in trials,”’ and that “[wjhen only the tortfeasor is identified, a fictitious presence appears at trial instead of the bona fide party.”); Lamz v. Geico General Insurance Company, 803 So.2d 593, 595 (Fla. 2001) (holding “that the jury should be made aware of the precise identity of an uninsured or underinsured insurance carrier if it is a party at trial,” and remarking that “[t]he policy behind such a requirement is that full disclosure of the identity of the parties protects the integrity of the jury system and prevents charades at trial.”). By virtue of the foregoing pronouncement in Stepanovitch, Pennsylvania has aligned itself with those states which permit the joinder of liability and UIM claims *338 for a single trial pursuant to Pa.R.C.P. 213(a) and 2229(b), and allow the identification of the UIM insurer as the real party in interest. Accord, Bingham. 24 Pa. D. & C. 5th at 30 (stating “that joinder of tort and UIM claims also conserves limited judicial resources, avoids multiplicity of suits and unnecessary litigation delay and expense, and safeguards against inconsistent verdicts in separate proceedings.”).
Nevertheless, the existence of a UIM coverage dispute based upon the issue of Kujawski’s residency presents an obstacle to the complete joinder of all issues in a consolidated trial. In an appeal involving a prQ-Koken policy which mandated UIM arbitration, the Superior Court in Richner v. McCance, 13 A.3d 950 (Pa. Super. 2011) considered the joinder of a tort claim with a UIM coverage dispute involving the applicability of the “regularly used, non-owned vehicle” exclusion. Id. at 954 & n.l. The UIM insurer, Erie Insurance Exchange, asserted that the tort action and the declaratory judgment claim had been misjoined “because the two claims did not arise out of the same transactions or occurrences and did not involve common questions of law or fact.” Id. at 955. After the trial court overruled Erie’s preliminary objections asserting a misjoinder, Erie appealed and argued that the lower court had erred “in failing to dismiss Richner’s action against Erie because Richner misjoined his tort action against [defendant and his employer] with a declaratory judgment action against his own insurer. Id.
The Superior Court in Richner observed that Rule 2229(b) allows a plaintiff to join two or more defendants as named parties in the same proceeding “if (1) the liabilities of the defendants arise from a common factual *339 background, and (2) a common question of law or fact affecting the liabilities of the defendants will arise in the action.” Id. at 959. In reversing the trial court, the Richner court concluded:
With respect to the first requirement, while in an attenuated sense, Richner’s tort action against McCance and [his employer] and the coverage issue with Erie both “arise” from the automobile accident between Richner and McCance, in fact Richner’s dispute with Erie arises from the formation of the insurance contract between Richner’s parents and Erie. More specifically, the dispute arises from interpretation of the language of the “regularly used, non-owned vehicle” exclusion clause in said contract. Richner’s tort claims against [defendants], including all questions of duty, breach of duty, causation, and damages, will be resolved through reference to what occurred during and after the automobile accident. The respective rights and obligations of Richner and Erie, in contrast, will derive entirely from the language of the UIM provisions of the Erie insurance contract.
With respect to the second requirement, no questions of law are common to both actions. The trial court found that a common nexus of fact exists between the two cases, namely Richner’s use of his employer’s vehicle on the day of the accident, [trial court citation omitted]. That Richner was operating his employer’s vehicle at the time of the accident with McCance, however, is far from dispositive evidence that Richner “regularly” used the vehicle. Richner’s use of his employer’s vehicle on a single occasion does not demonstrate frequency or regularity of his use of the car in question.
*340 For these reasons, we conclude that the trial court erred in ruling that Richner could join his tort claim against [defendants] with a count for declaratory judgment raising the applicability of an exclusion in the Erie policy.
Id. at 960. However, in an explanatory footnote to its holding, which explanation is relevant to Fogmeg’s pending objection to joinder, the Superior Court cautioned that it was not deciding the question of joinder following Koken, and remarked:
In its analysis of Pa.R.C.P. 2229(b), the trial court erroneously applied the reasoning of various common pleas courts favoring “the tort claim and the UIM issue proceeding as one case.” (Citations omitted). The case law cited by the trial court deals with the joinder of third party liability claims with plaintiffs’ claims against UIM insurance carriers for benefits. In these cases, the trial courts concluded that Pa.R.C.P. 2229(b) was satisfied because the third party claims and the underinsured motorist claims arose of the same occurrence, i.e., the motor vehicle accident, and involved the same factual questions of liability and damages. The analysis of this joinder issue is inapposite to the one we decide in this case. We emphasize that we are not here deciding the propriety of the joinder of third party liability claims with post -Koken UIM benefit claims.
Id. at n.4.
Prior to Stepanovich, the Pennsylvania common pleas courts reached conflicting conclusions as to whether the UIM carrier should be identified as a defendant in a consolidated tort and UIM trial. Compare Pelc v. Burkell *341 and State Farm Mutual Automobile Insurance Company, 30 Crawford Co. L. J. 64, 66 (Crawford Co. 2013) (“There is little, if any, prejudice to State Farm from having the jury know that the insurer is the party defendant.”) with Purta v. Blower and Erie Insurance Exchange, 2012 WL 6840333, at *3 (Lehigh Co. 2012) (“Plaintiffs, however, have proffered no argument remotely suggesting that evidence relating to the existence of [the UIM insurer] with potential financial exposure in the event of an excess verdict was in any manner relevant to the issues respecting negligence and causation concerning defendant Blower.”), aff’d, 60 A.3d 577 (Pa. Super. 2012), app. denied, 619 Pa. 716, 64 A.3d 632 (2013). The post -Richner ruling of the Superior Court in Stepanovich confirms that liability and UIM claims may be joined for a single trial, with the UIM insurer being identified as a named party, without violating the liability insurance proscription in Pa.R.E. 411. The issues of (a) Fogmeg’s negligence in causing the accident, (b) the injuries sustained by Kujawski in that accident, and (c) the damages recoverable by Kujawski for those injuries arise from the same factual background and involve common questions of law and fact relating to the potential liability of Fogmeg and Allstate for damages awardable to Kujawski. Therefore, subject to the jury instructions discussed in Section 11(B) below, the questions of Fogmeg’s causal negligence, Kujawski’s accident-related injuries, and the compensatory damages recoverable under Pennsylvania law will be tried in a single proceeding. As a consequence, Fogmeg’s request to remove Allstate “from the case caption” and to bar Kujawski from referring to Allstate as a party will be denied.
In light of the holding in Richner, the issue of Kujawski’s *342 residency at the time of the accident, and the concomitant availability ofUIM coverage under her grandparents ’ policy with Allstate, do not share a common factual background with the negligence, causation and damages issues, nor do those coverage matters implicate common questions of law or fact. The ultimate applicability of Allstate’s UIM policy involves “a factually intensive inquiry” regarding Kujawski’s residency with “some measure of permanency or habitual repetition” a her grandparents’ home, Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 965 (Pa. Super. 2007), app. denied, 596 Pa. 747, 946 A.2d 688 (2008), which is a question of physical fact rather than Kujawski’s intention or belief. Miller v. Poole, 45 A.3d 1143, 1148 (Pa. Super. 2012). Those factual issues are separate and distinct from the questions of liability for the accident and damages causally related to that accident, and as such, are not conducive to joinder under Rule 2229(b).
Trial courts are vested with the discretion to sever or bifurcate under Pa.R.C.P. 213(b) since they are “in the best position to evaluate the necessity for taking measures the rule permits.” Ball v. Bavard Pump & Tank Co., Inc., 620 Pa. 289, 304, 67 A.3d 759, 767 (2013). Bifurcation “should be carefully and cautiously applied” if it “will manifestly promote convenience and/or actually avoid prejudice.” Schmidt v. Boardman Co., 958 A.2d 498, 520 (Pa. Super. 2008), aff’d, 608 Pa. 327, 11 A.3d 924 (2011) (quoting Stevenson v. General Motors Corp., 513 Pa. 411, 521 A.2d 413, 419 (1987)). Before ordering bifurcation, the court should consider whether the separate issues to be addressed are so interwoven that evidence bearing on those questions will overlap during the segregated phases of the trial. See Ptak v. Masontown Men’s Softball League, 414 Pa. Super. 425, 429, 607 A.2d 297, 300 (1992), app. *343 denied, 533 Pa. 661, 625 A.2d 1194 (1993); Batzel v. Northeast Pain & Rehabilitation, 2006 WL 3187826, at *2 (Lacka. Co. 2006). As noted above, the liability and damages issues are not intermingled with the question of Kujawski’s residency, and to the contrary, involve independent proof.
Thus, Fogmeg’s request to bifurcate the liability and damages issues from the question of Kujawski’s residency will be granted, albeit not upon the specific conditions sought by Fogmeg relative to the identification of and reference to Allstate. Under the bifurcated trial procedure, the jury will first address the merits of Kujawski’s liability and UIM claims and fashion an appropriate verdict, and in the event that the damages awarded exceed Fogmeg’s liability insurance policy limits of $100,000.00, a second phase of the trial will be conducted before the same jury to determine whether Kujawski was a resident of the Pehanichs’ home on June 4, 2010. If the jury awards less than $100,000.00 in damages, the issue of Kujawski’s residency and the applicability of Allstate’s UIM coverage will be rendered moot. Since Allstate will be identified as a named defendant, a determination must be made with respect to the instructions that will be provided to the jury during the first phase of the bifurcated trial.
(B) JURY INSTRUCTIONS
The parties do not agree as to what instructions should be furnished to the jury in the consolidated trial. Kujawski maintains that the charge articulated in Moritz should be provided in its entirety, (Docket entry no. 32 at p. 11), whereas Allstate objects to the third, fifth, sixth and seventh components of the Moritz charge. (Docket entry no. 32 at p. 2) “Besides paragraphs (3), (5), (6) and (7) *344 of [Kujawski’s] suggested jury instructions from Moritz. Allstate has no objection to the remainder of [Kujawski’s] suggested jury instructions.” (Id. at p. 3). As previously noted, Fogmeg argues that neither the identity of Allstate as a party, nor the question of Kujawski’s UIM claim, should be disclosed in the jury instructions. (Docket entry no. 35 atp. 6).
In Moritz, the plaintiff filed a UIM suit solely against the UIM carrier, Horace Mann, after the plaintiff had already received payment of the tortfeasor’s liability insurance limits. Horace Mann argued that the jury should merely be informed “that this matter involves a motor vehicle accident involving two drivers, identifying the drivers, and also advising the jury that liability is not in dispute, but the extent of injuries being claimed by plaintiffs are in dispute and the only issue for the jury to decide is... what are the plaintiffs’ damages.” Moritz, supra, at *4. After noting that the plaintiff did “not seek to introduce evidence of Horace Mann’s UIM coverage limits or the amount of the tortfeasor’s liability insurance limits which she has collected,” we rejected the defense request and reasoned:
If the jury is not apprised of the reasons for Horace Mann being named as the only defendant in this case, some jurors may speculate as to why the admittedly negligent motorist, Cynthia Parlanti, is not named as a defendant or identified on the verdict slip. An insufficient explanation of the applicable UIM principles which are raised by the facts could cause other jurors to surmise that Moritz has already been fully compensated by the tortfeasor, or that any verdict in this matter may result in some form of a double recovery for Moritz. *345 In order to avoid such potential juror confusion, the better approach is to properly inform the jurors of the relevant legal considerations in a manner comparable to the standard civil jury instructions that are utilized in Alabama, Connecticut, Delaware, Iowa and Maryland.
Consequently, the jury in this case will be instructed that: (1) plaintiffs have brought this action against their own insurance company under coverage known as underinsuredmotorist coverage, which serves to provide compensation to a plaintiff for damages that would have been recoverable if the underinsured motorist had maintained an insurance policy which adequately covered the plaintiffs’ damages from an accident; (2) to recover against the defendant, the plaintiffs must prove that the other driver was negligent, that the negligence caused harm to the plaintiffs, and that the other driver did not have adequate liability insurance; (3) the defendant has stipulated that the plaintiffs’ insurance policy provides underinsured motorist coverage and that the policy was in effect at the time of the accident, such that the jurors need not concern themselves with the specifics of the policy; (4) the defendant has also agreed that the other driver was negligent and caused the accident, such that the jury need only determine whether the plaintiffs suffered harm as a result of the accident and, if so, what amount of money damages will fairly and adequately compensate the plaintiffs; (5) the fact that the plaintiffs are suing the defendant for underinsured motorist benefits suggests that the other driver had some insurance which was recovered by the plaintiffs; (6) the plaintiffs will not receive compensation twice for the same damages since any *346 jury award of damages in this case will be reduced by any amount that the plaintiffs have already received from the other driver and her insurer; and (7) the jury should determine an amount of money damages that will fairly and adequately compensate the plaintiffs for all the physical and financial injuries they have sustained as a result of the accident, without consideration of any amount that the plaintiffs may have received from the other driver or her insurer, since any such amount will be deducted by the court from the total sum that the jury may award.

Id

The foregoing instructions from Moritz are appropriate only in a case in which the plaintiff has sued the UIM insurer alone after having secured payment of the tortfeasor’s insurance policy limits. For that reason, and as Allstate has aptly argued, the fifth, sixth and seventh portions of the Moritz charge are clearly inapplicable. Moreover, inasmuch as Allstate does not agree that its UIM coverage applies due to the unresolved question of Kujawski’s residency at the time of the accident, the third facet of the Moritz instructions likewise does not apply in the case sub judice. Additionally, the first and second portions of the Moritz charge would reveal that Fogmeg has liability insurance, in contravention of Rule 411, see Flenke v. Huntington, 2015 WL 1208023, at *5 (Pa. Super. 2015), by informing the jury that UIM coverage “serves to provide compensation to a plaintiff for damages that would have been recoverable if the underinsured motorist had maintained an insurance policy which adequately covered the plaintiff’s damages,” and that the plaintiff must prove “that the other driver did not have adequate *347 liability insurance.” See Moritz, supra.
Although the Superior Court in Stepanovich clarified that the inclusion and identification of the UIM insurer as a named party in a consolidated tort and UIM benefits trial “would not necessarily run afoul” of PaJRJB. 411, it expressly cautioned that “[t]he issue of the appropriate language for instructions to the jury is not before us.” Stepanovich, 73 A.3d at 1150 n.5. In the few instances where trial courts have published rulings addressing jury instructions and admissible evidence in UIM trials, the courts have reached polar opposite conclusions. In Pele, supra, the trial judge declined to furnish any “details regarding the various UIM policies” or “the third-party settlement amount,” and instead held that the jury would be advised that “[a]ll that is necessary for you to know is that [plaintiff] has a claim for damages as a result of this accident” and that “[y]our duty will be to determine whether his claim is valid and, if so, how much in money damages he is entitled to receive.” Pele, 30 Crawford Co. L. J. at 66, 71. However, in Noone v. Progressive Direct Insurance Company, 2013 WL 8367579 (M.D. Pa. 2013), the federal district court denied the UIM carrier’s motion “to preclude plaintiff from entering into evidence the amount of premiums that plaintiff paid on the [UIM] policy,” “the limits of the underinsured motorist coverage available under the policy,” “the amount of liability insurance coverage available to the tortfeasor and the amount of liability insurance coverage recovered by plaintiff from the tortfeasor.” Id. at * 1. The Noone court found that “it is important that the jury understand the limits of the tortfeasor’s liability insurance, and the amount that plaintiff received from that insurance,” and reasoned that “[i]t is not overly prejudicial to the defendant *348 for the jury to know the amount of coverage that plaintiff purchased or the amount that she paid for the policy” since this “background information will assist the jury in completely understanding and evaluating the case.” Id. at *2. Contrary to Noone, the common pleas court in Phy v. Nikulin, 2014 WL 2681087 (Phila. Co. 2014) granted the UIM insurer’s motion in limine, and precluded the plaintiff “from introducing evidence of or referring to details pertaining to the [UIM] policy,” “the amount or payment of insurance premiums for the said insurance policy,” and “the limits of underinsured motorist coverage afforded to plaintiff under that policy.” Id. at * 1.
The Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions has not developed any recommended instructions for UIM jury trials after Koken, regardless of whether the liability and UIM claims are joined for a single trial. Those jurisdictions which permit consolidated trials of liability and UIM claims have formulated instructions which provide varying amounts of information to the jury. Some states have published jury instructions for UIM trials which are to be used only in cases where the UIM insurer alone is sued. See, e.g., Arkansas Model Jury Instructions -Civil § 2303, Comment (stating that “[t]he case contemplated by this instruction is against the underinsured motorist coverage carrier only,” and that “combination in one action of claims against both the tortfeasor and the underinsured motorist coverage carrier, while avoiding a multiplicity of lawsuits, might raise a question concerning the admissibility of evidence of the tortfeasor’s liability insurance” in violation of Ark. R. Evid. 403); Oklahoma Uniform Jury Instructions — Civil No. 2.4, Notes on Use (2d ed.) (“The plaintiff *349 may name both the underinsured motorist carrier and the tortfeasor in the same action,” and “this instruction should not be given if the tortfeasor is named as a party.”)- Florida recommends that the trial judge inform the jury that the UIM insurer is the plaintiff’s “motor vehicle insurance company and provided [him/her] underinsured motorist coverage, which may be available to pay some or all of the damages that may be awarded.” Florida Standard Jury Instructions in Civil Cases § 201.2, “Introduction of Participants and Their Roles” (2014). In Alabama, jurors are advised that the plaintiff asserts that the defendant-driver “was an underinsured motorist” because [s]he was “covered by liability insurance, but [plaintiff] says the amount of insurance is not enough to make [him/ her] whole.” Alabama Pattern Jury Instructions — Civil § 20.53 (3d ed. 2012). Alabama jurors are further charged that “[w]hen deciding how much money to award, the amount of [defendant’s] liability insurance coverage and the amount of [plaintiffs] underinsured motorist insurance are not important.” Id.
The pattern jury instructions utilized in Alabama expressly reference the existence and amount of the tortfeasor’s liability insurance and could prejudice Fogmeg in violation of Pa.R.E. 411. However, Florida’s standard instruction, which simply identifies the UIM insurer as the plaintiff’s insurer that “provided [plaintiff] underinsured motorist coverage which may be available to pay some or all of the damages that may be awarded,” would not inject the subject of Fogmeg’s liability insurance coverage into the case. Furthermore, since Allstate and its counsel will participate in the trial by examining witnesses and presenting an opening statement and a closing argument, it is imperative that the jury understand Allstate’s status as *350 a party adverse to Kujawski.
Consequently, the jury will be instructed that Kujawski must establish by a preponderance of the evidence that Fogmeg was negligent, that Fogmeg’s negligence caused harm to Kujawski, and that Kujawski suffered damages as a result of her injuries. See Moritz, supra, at *5. The jury will also be informed that Allstate’s policy provides underinsured motorist coverage, which may be available to pay some of the damages that may be awarded, see Florida Standard Jury Instructions in Civil Cases § 201.2, and that Allstate should not be treated “any differently than any other defendant in a civil action simply because Allstate is an insurance company.” Pele, supra, at 71. Finally, in light of the bifurcation of Kujawski’s residency issue, the jury will be advised that depending upon its verdict at the conclusion of the liability and damages portion of the trial, it may hear additional evidence and render a second verdict with respect to Kujawski’s residency at the time of the accident.
Accordingly, prior to the presentation of opening statements, the following jury instructions will be furnished to the jury:
Members of the jury, this case arises from an automobile accident that occurred on June 4, 2010, when the plaintiff, Jessica Kujawski, was a passenger in a vehicle that was involved in a collision with an automobile that was being operated by defendant, Joseph Fogmeg. Plaintiff has filed this action seeking to recover damages for injuries and losses that she claims were caused by the accident. Plaintiff has brought this lawsuit against the other driver, Joseph Fogmeg, and her relatives’ insurance company, Allstate *351 Insurance Company, which issued an insurance policy that provides underinsured motorist coverage which may be available to pay some of the damages that may be awarded in this case. You should not treat the defendant, Allstate Insurance Company, any differently than any other defendant in this case simply because Allstate Insurance Company is an insurance company.
To recover damages in this case, the plaintiff must prove by a preponderance of the evidence that the defendant, Joseph Fogmeg, was negligent, that his negligence was a factual cause of harm to the plaintiff, and that the plaintiff suffered damages as a result of that harm. The defendants do not dispute that the other driver, Joseph Fogmeg, was negligent and caused the accident on June 4, 2010. However, the defendants deny that the accident was a factual cause of harm to the plaintiff and that she sustained any damages as a result of the accident.
Therefore, you will have to determine whether the plaintiff, Jessica Kujawski, suffered injuries as a result of the accident, and, if so, what amount of money damages will fairly and adequately compensate for her losses. Depending upon the determination that you make in that regard, you may hear some additional evidence and have to render a second verdict on another issue in the case. I will provide you with more specific instructions on these issues later in the trial, but for the time being, your only task is to determine whether the plaintiff suffered harm as a result of the accident, and, if so, what amount of money damages will fairly and adequately compensate her for that harm.
*352 An appropriate order follows.
ORDER
And now, this 15th day of April, 2015, upon consideration of the parties’ pre-trial submissions (Docket entry nos. 32, 33, 35), and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:
1. Plaintiff’s third party liability claim against defendant, Joseph Fogmeg, and underinsured motorist (UIM) claim against defendant, Allstate Insurance Company, are joined for a consolidated trial pursuant to Pa.R.C.P. 2229(b), with Allstate Insurance Company being identified as a real party in interest and the jury being provided with the instructions set forth in the foregoing memorandum; and
2. In accordance with Pa.R.C.P. 213(b), the issues of liability and damages will be bifurcated from the questions of plaintiff’s residency at the time of the accident and the applicability of her grandparents’ UIM policy with defendant, Allstate Insurance Company. If the jury renders a verdict in excess of Joseph Fogmeg’s liability insurance policy limits at the conclusion of the liability and damages phase of the trial, a second phase of the trial will be conducted before the same jury to determine whether plaintiff was a “resident relative” of Richard and Marion Pehanich on June 4,2010. In the event that the jury awards damages in an amount less than Joseph Fogmeg’s liability insurance policy limits, the issue of plaintiffs residency and the applicability of Allstate Insurance Company’s UIM policy will be rendered moot and a second phase of the trial on those issues will not be conducted.

. Part 3 of Allstate’s policy entitled “Underinsured Motorists Insurance Coverage” states that Allstate “will pay damages to an insured person for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured auto.” (Docket entry no. 34 at p. 15). An “underinsured auto” is defined by the policy as “[a] motor vehicle which has bodily injury liability protection in effect at the time of the accident, but its limit for bodily injury liability is less than the damages the injured person is legally entitled to recover.” (Id. atp. 16).

. Allstate’s policy obligates it to pay UIM benefits to an “insured person” who is defined, inter alia, as “[y]ou and any resident relative.” (Docket entry no. 34 at p. 15). The word “you” in Allstate’s policy means “the resident policyholder named on the declarations page and that policyholder’s resident spouse.” (Id. at p. 16). Kujawski’s grandparents, Richard and Marion Pehanich, are the resident policyholders named on the declarations page of the policy. If Kujawski was a “resident relative” of the Pehanichs at the time of her accident, she is eligible for UIM coverage under the policy.