J-A11028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH DUGAN AND WATER TRANSFER SOLUTIONS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD M. GALLO | : | |
| | : | No. 983 WDA 2022 |
| Appellant | : | |
| ------------------------------------------ | : | |
| ------------------------------------------ | : | |
| DONALD M. GALLO | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH DUGAN, WATER TRANSFER SOLUTIONS, LLC, AND BLUE GROUND MINING, LLC | : | |

Appeal from the Judgment Entered July 18, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-19-013359

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JUNE 26, 2023**

Appellant, Donald M. Gallo, appeals from the July 18, 2022 judgment

entered in favor of Appellees, Joseph Dugan and Water Transfer Solutions,

LLC ("WTS"), following a non-jury trial.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the factual and procedural background of this matter as follows:

This appeal arises from this [c]ourt's entry of a non-jury verdict … in favor of [Appellees] on their declaratory judgment action. The effect of the judgment was to declare null and void a purported Operating Agreement ("Agreement" or "Purported Agreement"), allegedly executed by both parties. The Agreement purported to create an ownership interest for … Gallo … in [WTS], a Pennsylvania Limited Liability Company, owned by … Dugan…. After considering the evidence presented in a single-day[,] non-jury trial, this [c]ourt found the Purported Agreement to be inauthentic and Gallo to have no ownership interest in WTS. The effect of the judgment was also to permanently enjoin [Gallo] from proceeding against [Appellees] in arbitration proceedings relating to disputes arising from the Purported Agreement.

On August 29, 2019, Gallo initiated arbitration proceedings in the American Arbitration Association [("AAA")] against [Appellees], pursuant to the Purported Agreement, which provided for arbitration of disputes. [Appellees] initiated the instant case on September 20, 2019, by requesting an injunction against Gallo from proceeding in arbitration and seeking a declaratory judgment that the Agreement upon which Gallo relied to make his claims was invalid. [Appellees'] theory is, essentially, that the Purported Agreement proffered by Gallo was procured by forgery or some other improper means, and that Dugan had not executed any such document.

On August 26, 2020, this [c]ourt granted [Appellees'] preliminary injunction to enjoin the arbitration proceedings. As a result, Gallo ended the arbitration proceedings and filed a complaint in the Washington County Court of Common Pleas at docket no. 2020-5131. By [o]rder dated January 5, 2021, this [c]ourt transferred the Washington County case to Allegheny County to be consolidated with the instant case. Importantly, for purposes of this appeal, … Gallo demanded a jury trial for his claims against [Appellees] in the consolidated action. The jury would have sat as the fact[-]finder of, *inter alia*, whether the Purported Agreement was valid and binding upon Dugan. However, by [o]rder dated July 1, 2021, this [c]ourt severed [Appellees'] declaratory judgment claims from the rest of the jury trial to be tried non-jury with this [c]ourt sitting as fact[-]finder. The non-

jury trial was tried on February 14, 2022, about a month before the jury trial was scheduled to begin. As a result of this [c]ourt's severance of the declaratory judgment action and its entry of verdict in favor of [Appellees], [Gallo] appealed.

Trial Court Opinion ("TCO"), 9/14/22, at 1-2.

Following Gallo's appeal, the trial court directed Gallo to file a Pa.R.A.P. 1925(b) concise statement of errors complained, and he timely complied.[1]

Presently, Gallo raises the following seven questions for our review:

1. Did the trial [c]ourt commit an error of law or abuse its discretion when it kept the issue of whether or not a contract existed and … Gallo [was] an owner of [WTS] away from the jury [sic], thereby deprive [sic] Gallo of his Pennsylvania Constitutional right to a trial by jury on his claims?

2. Did the trial [c]ourt commit an error of law or abuse it's [sic] [discretion] when it retained jurisdiction of Dugan's third claim, i.e.[,] "Declaration of Non-Liability," which improperly asked the [c]ourt as fact[-]finder to decide factual defenses to Gallo's claims that were pending in a case scheduled for a jury trial?

3. Did the trial [c]ourt commit an error of law or abuse its discretion when it retained jurisdiction of the claims made in the Declaratory Judgment action where all three claims related to barring an arbitration that had been terminated, and where all of Gallo's claims were instead pending in the same court and scheduled for trial, and therefore the issue was moot?

4. Did the trial [c]ourt commit an error of law or abuse its discretion by sua sponte severing two previously[-]consolidated cases, scheduling them for two trials a month apart, and thus depriving Gallo of a trial by jury on his claims?

5. Were the [t]rial [c]ourt's findings supported by substantial evidence?

6. Did the trial [c]ourt commit an error of law or abuse of discretion in denying by [o]rder or sub silentio[] Gallo's Motion to

---

[1] We note that Gallo filed his notice of appeal at GD-19-013359, the docket pertaining to Appellees' action at which the July 18, 2022 judgment was entered.

Dismiss, Motion to Dismiss Pursuant to Rule 1032(b), and Motion for Summary Judgment, where there was no case or controversy regarding arbitration, and where the only other claim was to pre-judge Dugan and [WTS's] defenses to Gallo's claims pending in the companion case that was scheduled for a trial by jury?

7. Did the trial [c]ourt commit an error of law or abuse its discretion when it failed to grant Gallo's Motion for Compulsory Non-Suit, where the issue of arbitration was moot, and where [Appellees] had failed to produce evidence to establish a *prima facie* case for their claims?

Gallo's Brief at 11-13 (some italics omitted).

Though Gallo raises seven questions for our review in the Statement of Questions Involved section of his brief, he does not divide the Argument section of his brief into seven corresponding parts. Instead, he divides it into five parts. We admonish Gallo for his lack of compliance with Pa.R.A.P. 2119(a). *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); ***Donaldson v. Davidson Bros., Inc.***, 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining that the appellant failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised"). Nevertheless, Gallo's noncompliance does not preclude our review, and we will address the five questions he raises in the Argument section of his brief.

**First Issue**

- 4 -

In Gallo's first issue, he contends that he is entitled to have a jury decide the factual dispute between the parties. Gallo's Brief at 34. He explains that he "demanded a jury trial[,] and the defense of whether the Operating Agreement was executed by both men and whether Gallo is an owner of WTS … should have been decided by a jury." *Id.* at 39. He advances that the facts in dispute are classic jury questions, and says that there is no question that his "asserted claims[,] *i.e.*, breach of contract, conversion, breach of fiduciary duty, voidable transfer, and intentional interference with contractual relations[,] … are decided by juries." *Id.* at 35-36 (citing cases in support). He also claims that Pennsylvania's constitutional history extends heightened protection to the right to a trial by jury. *Id.* at 36-39. Gallo asserts that the trial court erred, abused its discretion, and violated his constitutional right to a jury trial by removing the fact issues from determination by a jury. *Id.* at 43.

No relief is due on this basis. Initially, while Gallo maintains that the type of claims he asserted have properly proceeded to jury trials in other cases, *see id.* at 35-36, he proffers no similar authority supporting his right to a jury trial for Appellees' specific claims, which seek an injunction precluding arbitration, a declaration of non-arbitrability, and a declaration of non-liability for the claim set forth by Gallo in his demand for arbitration or any similar claim. *See also Petrecca v. Allstate Ins. Co.*, 797 A.2d 322, 325 (Pa. Super. 2002) ("Article I, Section Six of the Pennsylvania Constitution guarantees the right to a jury trial in all matters in which a right to a jury trial

was recognized at the time the Constitution was written or later granted by statute.") (citation omitted). We decline to search for such authority for him and craft an argument on his behalf. *See **Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. … This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citations omitted). Thus, Gallo has not convinced us that Appellees' claims should have proceeded to a jury trial.

Further, to the extent Gallo complains that a jury should decide his claims, Appellees and the trial court both persuasively point out that, if the Operating Agreement were valid, it would mean that Gallo had agreed to forego a jury trial on his claims. ***See*** Appellees' Brief at 22 ("Gallo's claims that the [c]ourt erred in severing the actions and that he was robbed of his right to trial by jury are nothing more than red herrings on appeal as[,] if the purported Operating Agreement had been found valid at the bench trial and [a] ruling [been] issued in favor of Gallo, it would have implied a finding that Gallo had voluntarily agreed to waive his right to such jury trial…."); ***see also*** TCO at 8 ("[Gallo's] initial chosen forum was arbitration without a jury, suggesting that his subsequent move to civil court and demand for a jury trial are disingenuous and designed to delay the adjudication of [Appellees'] declaratory action."). As such, his present insistence that we must protect and uphold his right to a jury trial comes across as incredible.

Finally, as the trial court noted, under Pennsylvania Rule of Civil Procedure 213(b), "[t]he court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on any motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues." Pa.R.Civ.P. 213(b); **see also** TCO at 7. "The decision whether to sever or bifurcate under Rule 213(b) is entrusted to the discretion of the trial court, which is in the best position to evaluate the necessity for taking measures the rule permits." **Ball v. Bayard Pump & Tank Co., Inc.**, 67 A.3d 759, 767 (Pa. 2013) (citation omitted). Here, the trial court explained its reasoning for severing Appellees' action, opining that, "[b]ecause the threshold issue in this case was whether the proffered Agreement was authentic and valid, the trying of all related issues at a jury trial would have been a waste of judicial resources in the event that the Agreement was, in fact, invalid." TCO at 7. We discern no abuse of discretion in this respect. Therefore, based on the foregoing, we reject Gallo's claim that he is entitled to have a jury decide Appellees' claims.

### Second Issue

In Gallo's second issue, he claims that the "trial court violated controlling law in retaining jurisdiction of a declaratory judgment action whose purpose was to prejudge Gallo's jury claims." Gallo's Brief at 45 (unnecessary capitalization and emphasis omitted). Gallo says that, "[o]nce Dugan and WTS became aware that Gallo was asserting claims against them[,] they filed

the instant [c]omplaint under the Declaratory Judgment Act for the purpose of avoiding Gallo's claims based on what is an affirmative defense…." *Id.* Further, he adds that, "[a]fter Gallo terminated the arbitration in favor of a civil [c]omplaint, Dugan and WTS asserted that the [t]rial [c]ourt should still decide whether or not they had any liability to Gallo's nine claims." *Id.* at 45-46. Gallo insists that "[d]eclaratory relief should be withheld when the request for relief is an attempt to adjudicate the validity of a defense to a potential future lawsuit." *Id.* at 46 (quoting *OSRAM Sylvania Products, Inc. v. Comsup Commodities, Inc.*, 845 A.2d 846, 848 (Pa. Super. 2004)). He also states that our Supreme Court has denied declaratory relief where it was sought to establish in advance the validity of an affirmative defense. *Id.* at 47 (citing *Com., Dept. of General Services v. Frank Briscoe Co., Inc.*, 466 A.2d 1336, 1340-41 (Pa. 1983)).

We disagree with Gallo that the trial court should not have retained jurisdiction of Appellees' declaratory judgment action in this matter. At the outset, we recognize that "[a] declaratory judgment is not obtainable as a matter of right. Whether a trial court should exercise jurisdiction over a declaratory judgment action is a matter of sound judicial discretion." *OSRAM*, 845 A.2d at 848 (citations omitted).

Here, the trial court aptly distinguished the *OSRAM* and *Dep't of Gen. Servs.* cases relied on by Gallo, and explained why it exercised jurisdiction over Appellees' action, as follows:

Under the Declaratory Judgment Act, "[a]ny person interested under a … written contract … may have determined any question of construction or validity arising under the … contract, and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S.[] § 7533.  [Appellees] initiated this declaratory action to determine the validity of the Purported Agreement, under the auspices of which [Gallo] had commenced arbitration proceedings.  Importantly, though, [Gallo] does not contend that [Appellees'] initial[] filing of the declaratory action to stay the arbitration proceedings was improper.  It was only thereafter that [Gallo] terminated arbitration and filed a civil action in the Washington County Court of Common Pleas, demanding a trial by jury.  [Gallo] contends that, under these circumstances, [Appellees] cannot circumvent [Gallo's] civil action under the Purported Agreement by seeking a declaratory judgment regarding the Agreement. [Gallo] cites **OSRAM** … and **De[pt.] of General Services** … for this proposition.  However, these cases are inapplicable to the instant case.

In **De[pt.] of General Services**, the Supreme Court considered whether a declaratory judgment claim regarding several contracts could proceed in anticipation of litigation over those contracts, where any such contract dispute was committed by statute to the jurisdiction of the Board of Claims, an administrative agency.  The Court held that "the declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum."  The Court's concern was that[, through] the declaratory judgment[, the] plaintiff would be seeking an advance adjudication of its defense in a **different forum** from the forum to which initial jurisdiction of that issue was committed.

**OSRAM** presents a similar concern.[2]  In that case, the Superior Court held, more broadly than the **De[pt.] of General Services**

_____

[2] By way of further background, in **OSRAM**, two corporations — OSRAM and Comsup — were involved in a contract dispute.  Comsup filed an action in California against OSRAM for breach of contract.  A month later, OSRAM filed an action in Bradford County, Pennsylvania, seeking a declaration that no contract existed between OSRAM or Comsup or, in the alternative, that any contract they had was barred by the Statute of Frauds.  The Bradford County

*(Footnote Continued Next Page)*

- 9 -

Court, that "declaratory relief should be withheld when the request for relief is an attempt to adjudicate the validity of a defense to a potential future lawsuit." Despite the apparent expanding of that holding, the Superior Court articulated the same concern that "the defendant could defeat the plaintiff's choice of forum by winning the race to the courthouse and filing a declaratory judgment action."

Importantly, neither case addresses whether a declaratory judgment claim may be adjudicated in advance of the underlying contract dispute when **both** actions are consolidated and committed to the **same forum**. Instead, both cases are primarily concerned with a situation where a potential defendant can prejudge its claims in its own choice of forum, rather than the plaintiff's choice of forum or an agency forum to which the issues are committed. Here, both the declaratory judgment claim and [Gallo's] claims are being adjudicated in the same judicial proceeding. Thus, the concerns of **OSRAM** and **De[pt.] of General Services** are not present here. Additionally, … Gallo made his choice of forum; he chose arbitration.

Moreover, neither case addresses a situation where, as here, a declaratory judgment action was initiated **in response to**, rather than **in anticipation of**, the filing of a contract claim in arbitration. … Gallo does not, and cannot, contend that this [c]ourt was unable to entertain [Appellees'] declaratory action in response to Gallo's initiation of arbitration proceedings. **See Ross Development Co. v. Advance Bldg. Development, Inc.**, 803 A.2d 194, 196-97 (Pa. Super. 2002) (court may entertain declaratory judgment action to determine whether a valid agreement to arbitrate exists). Instead, Gallo refiled his action in a civil court, demanding a jury trial, in what amounts to a disingenuous attempt to stall [Appellees'] declaratory action that was properly brought before this [c]ourt. Indeed, and contrary to

court declined to exercise jurisdiction over OSRAM's declaratory judgment action, ascertaining that the Bradford County action was "merely a tactical maneuver designed to test the validity of a defense to a future lawsuit and to deprive Comsup of its choice of forum." **OSRAM**, 845 A.2d at 848. On appeal, this Court affirmed the Bradford County court's decision to dismiss the declaratory judgment action. In doing so, we determined that OSRAM was not seeking clarification with respect to its legal rights, status, or other legal relationships, but instead was forum shopping and trying to preempt Comsup's right to file a lawsuit. **Id.** at 849.

[Gallo's] position, the purpose of declaratory judgment is "to speedily determine issues that 'would … be delayed, to the possible injury of those interested if they were compelled to wait the ordinary course of judicial proceedings.'"

TCO at 5-7 (emphasis in original; internal citations omitted).

We agree with the trial court that **OSRAM** and **Dept. of General Services** are distinguishable. As such, Gallo fails to persuade us that the trial court violated controlling law in retaining jurisdiction of Appellees' action, and we discern no abuse of discretion.

**Third Issue**

In Gallo's third issue, he argues that "the trial court erred in deciding the moot issue of whether Gallo could arbitrate his claims." Gallo's Brief at 48 (unnecessary capitalization and emphasis omitted). He explains that he terminated the arbitration proceedings in the fall of 2020, and subsequently filed a complaint in the Washington County Court of Common Pleas. **See id.** In seeking favorable rulings in litigation, he suggests that he has waived his right to arbitration. **Id.** (citing **DiDonato v. Ski Shawnee, Inc.**, 242 A.3d 312 (Pa. Super. 2020); **O'Donnell v. Hovnanian Enterprises, Inc.**, 29 A.3d 1183 (Pa. Super. 2011)). Consequently, Gallo advances that, "[s]ince there was no case or controversy regarding whether Gallo could arbitrate his claims, the issue was moot." **Id.** at 49. Based on mootness, Gallo says that the trial court should have dismissed Appellees' action and allowed the jury trial to proceed on the merits of his claims. **Id.**

Again, we disagree. Initially, Gallo's argument ignores that Appellees sought a declaration of non-liability. Specifically, in addition to enjoining the

- 11 -

arbitration and seeking a declaration of non-arbitrability, Appellees sought a declaration that the Operating Agreement is null and void as it is a forgery or otherwise a product of fraud, that Gallo had no ownership interest in WTS, and that they have no liability to Gallo for the claim set forth in his demand for arbitration, or any other similar claim asserted by him. **See** Complaint, 9/20/19, at 10. Gallo does not explain how his terminating the arbitration proceedings eliminated the controversy of whether the Agreement was valid. **See In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002) ("As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. … An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (cleaned up).

Moreover, we are not convinced that Appellees' issues pertaining to arbitration were completely moot. Though Gallo withdrew his initial arbitration action and subsequently availed himself of the judicial process, he does not articulate why a controversy did not remain pertaining to whether he could submit disputes arising from the Agreement to arbitration. **See** Appellees' Brief at 29-30 ("Appellees presented competent evidence in their case in chief to support a finding that … Gallo should be permanently enjoined from taking any action to enforce [the purported Agreement] to claim an ownership interest in WTS.") (citation omitted). Indeed, following the non-jury trial, the trial court entered an order permanently enjoining Gallo "from proceeding against [Appellees] in American Arbitration Association proceedings relating

- 12 -

to disputes arising from the Purported Operating Agreement." **See** Trial Court Order, 3/3/22, at 1.

In addition, the trial court reasonably viewed Gallo's refiling his action in a civil court and demanding a jury trial, as a disingenuous attempt to stall Appellees' declaratory judgment action, which was properly brought before it. **See** TCO at 6, 8.  Appellees similarly posit that Gallo's civil suit was designed to undermine their declaratory judgment action, stating:

> Despite the preliminary injunction expressly precluding Gallo from taking any further action in connection with the arbitration, Gallo intentionally disregarded a [c]ourt [o]rder and withdrew his demand for arbitration in an attempt to defeat Dugan and WTS['s] claims for declaratory relief.  Gallo was not entitled to summary judgment merely because he violated the preliminary injunction and withdrew the arbitration proceeding.  Instead, [Appellees] were properly permitted to pursue their permanent injunction against Gallo and obtain judicial declaration of the parties' rights and arbitrability of the claim.  The fact that the prior arbitration proceeding was withdrawn and that no party was seeking to arbitrate at the time of the bench trial was not dispositive of the issues underlying the two counts of declaratory relief and was actually done by Gallo in violation of a valid [o]rder of [c]ourt.

Appellees' Brief at 28; **see also** Trial Court Order, 8/26/20 (preliminarily enjoining Gallo "from taking any further action or making any further submissions in connection with the AAA Arbitration as described in [Appellees' m]otion, and from continuing with said arbitration pending further order of court").  Gallo's attempts to interfere with Appellees' action should not be rewarded.  As such, for the above-stated reasons, Gallo's third issue fails.

**Fourth Issue**

- 13 -

In Gallo's fourth issue, he complains that the trial court erred in denying him a compulsory non-suit after the close of Appellees' case. Gallo's Brief at 50. Gallo explains that he moved for a compulsory non-suit on the basis that Appellees failed to adduce evidence of a *prima facie* case for any of their claims, as he says their claims all required that Gallo be seeking to arbitrate his claims against them. ***See id.***; Gallo's Reply Brief at 10.

We need not address this issue further as it is moot. "Once [the a]ppellant chose to present its evidence, the trial court's ruling on the compulsory non[-]suit was rendered moot." ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.***, 933 A.2d 664, 668 (Pa. Super. 2007). This Court has previously elaborated:

> If the defendant elects to proceed, the non-suit stage is over and the correctness of the court's ruling is moot. [The d]efendant in this case elected to proceed and placed its entire case into evidence after [the] plaintiffs rested. Therefore, we do not rule on the correctness of the denial of the motion for compulsory non-suit as such.

***Id.*** (cleaned up). Accordingly, Gallo's fourth issue is moot and warrants no relief.

## Fifth Issue

In Gallo's fifth and final issue, he argues that we should reverse the trial court's verdict as it is not supported by substantial evidence. Gallo's Brief at 51. He contends that Appellees did not prove their claims since arbitration was no longer at issue, and he attacks numerous findings made by the trial court, including, *inter alia*, that Dugan never signed the Operating Agreement

and that Gallo did not hold himself out as a partner of the business. ***See id.*** at 52-59.

> In assessing Gallo's argument, we remain mindful that,

> [w]hen reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion….

> The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence[,] we may not substitute our judgment for that of the trial court.

***Ross Development Co.***, 803 A.2d at 195-96 (cleaned up).

> Here, the trial court recounted its findings as follows:

> At trial, both parties presented sharply conflicting accounts of the facts, and the circumstances surrounding the Purported Agreement and Gallo's involvement with WTS and Dugan are far from clear. Dugan and Gallo have known each other for about 30 years. In 2016, Dugan's company, WTS, was short on capital and sought additional capital investments. Dugan and WTS sought to elicit an investment from Robert McMillian ("McMillian"). McMillian apparently had a business relationship with Lola Energy, from whom WTS sought to obtain new work. In order to entice McMillian's investment in WTS, Dugan also offered [for] Gallo to invest in WTS. In exchange for both investments, McMillian and Gallo would each receive 10% of the profits generated from any work from Lola Energy. In furtherance of this plan, Dugan and Gallo opened bank accounts at PNC and Chrome Federal Credit Union into which Gallo deposited $25,000 each. The full $50,000 was eventually transferred to Chrome. These accounts were separate from WTS's main operating account at a different bank.

> In order to use the Chrome account, Chrome required certain documents about the LLC to be submitted with them. Although WTS was able to make withdrawals from the account, internal communications from Chrome suggest that they were still missing

some required documents, such as an operating agreement. Gallo was notified of this deficiency, and he testified that it fell upon him to correct it. Gallo contacted his personal attorney, Hagen Starz, to draft the Purported Agreement. There was seemingly no input in the drafting of this document from Dugan or his attorneys, as the Purported Agreement that Gallo proffers as executed is unchanged from the draft drawn up from Attorney Starz, despite that Attorney Starz himself communicated that a few changes would be necessary. The document also contains numerous errors and inconsistencies that would have likely been corrected during the negotiation and preparation of such an important document. For example, the document lists WTS's place of business as Gallo's home address and incorrectly identifies it as a Pennsylvania, rather than a Delaware, LLC. Dugan credibly testified to never having signed this document, but somehow a photocopy of the Purported Agreement was given to Chrome for its records.

Ultimately, McMillian never invested in WTS[,] and no new work was received from Lola Energy. As such, the deal involving Gallo fell through and was never consummated by Dugan. Consequently, in late 2016[,] Dugan offered to return Gallo's $50,000. The evidence presented some doubt about Dugan's ability to return the $50,000 immediately, given WTS's poor financial state at the time and the fact that a good portion of the money had already been spent on materials and equipment for a possible Lola Energy job. However, owing to Dugan and Gallo's friendly relationship, Gallo expressed that he did not need Dugan to return the money immediately.

The money was eventually returned in 2018, which Gallo accepted. Gallo's acceptance of the money is inconsistent with his position that he owned 20% of the company beginning in 2016, but is consistent with the understanding that the money was returned because the precondition to the arrangement, McMillian's investment, had not been met. Gallo's attempts to avoid this conclusion by characterizing the $50,000 — the exact amount Gallo paid into the bank accounts — as a membership distribution. However, Gallo did not report it as a distribution on his tax returns, again inconsistent with his position. In the two years prior to receiving the money, Gallo did not hold himself out as a member of WTS, did not participate in WTS's business, and did not keep abreast of WTS's happenings. Gallo only took an interest in WTS when he learned of its eventual profitability. Thus, Gallo's behavior is inconsistent with an ownership interest.

Despite this, Gallo still contends that he has an ownership interest in WTS and proffered the Purported Agreement as evidence. However, Gallo has failed to convince this [c]ourt of the Purported Agreement's authenticity, thus severely hampering his credibility and the weight of his testimony. Most significantly, Gallo is unable to proffer an original copy of the agreement. As the proponent of the document, Gallo has the burden of proving its authenticity. Although Gallo contends that Chrome has the original, there is no explanation for why Chrome has not provided the original. It seems that Chrome made a photocopy of the original document for its own records, but that Gallo left the original with Chrome rather than take it back for WTS's records. Presumably the original, if it exists, was discarded. The handwriting experts disagreed as to the authenticity of the signature on the copy. Although it seemed to match Dugan's signature, one expert supposed that an image of Dugan's signature could have been transposed on a digital copy of the agreement. The problem is that, without an original, it is impossible to say whether ink was ever put to paper.

Gallo points to much evidence adduced at trial that he contends would prove the validity of the Purported Agreement. This evidence has already been recited above, including the amounts that Gallo paid into PNC and Chrome[,] and the fact that Chrome required an operating agreement to use the account. At most, however, this evidence points to the fact that an agreement was contemplated and perhaps set in motion, but it cannot prove that it was ever fully consummated by the execution of the document that Gallo proffers. As such, this [c]ourt's finding that the Purported Agreement creates no ownership interest for Gallo in WTS is not contrary to the substantial evidence.

TCO at 9-11.

In reflecting on its findings, the trial court noted that its "ultimate verdict … is based upon its determination of the credibility of the witnesses and is supported by substantial evidence." *Id.* at 12. It explained that, "[b]ecause the facts in the case are far from clear, it was incumbent upon this [c]ourt to weigh the conflicting evidence and make credibility determinations." *Id.* The

trial court stated that, "[s]imply put, this court believed Dugan and did not believe Gallo." ***Id.***

Based on our careful reading of the trial transcript, we determine that the trial court's factual determinations are supported by substantial evidence, and that its conclusions are reasonably drawn from such evidence. The trial court chose to credit Dugan's testimony, and we may not substitute our judgment for that of the trial court. As such, no relief is due on Gallo's last issue.

In sum, all of Gallo's issues lack merit. Accordingly, we affirm the trial court's July 18, 2022 judgment.

Judgment affirmed.

Judge Pellegrini joins this memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/2023